# Richmond

THOMAS J. ROUNTREE, ET AL., ETC., ET AL. v. ALICE M. ROUNTREE.

June 16, 1958.

Record No. 4790.

Present, All the Justices.

The opinion states the case.

*John F. Rixey (Rixey & Rixey*, on brief), for the plaintiffs in error.

*Louis B. Fine* and *Jerrold G. Weinberg,* for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Alice M. Rountree instituted action against Thomas J. Rountree and Margaret G. Rountree, partners trading as Rountree's Paint and Spray Equipment Company, and James K. Gregory for injuries she sustained in an automobile accident involving the car she was operating and a pickup truck owned by the company and operated by Gregory.

The litigants will be referred to at times as plaintiff and defendants in accordance with the respective positions they occupied in the court below.

At a trial on January 24, 1956, a jury verdict was returned for plaintiff in the sum of $12,500 upon which judgment was entered. On appeal we reversed the judgment and remanded the case for a new trial. *Rountree* v. *Rountree*, 198 Va. 658, 96 S. E. 2d 113.

The second trial was had on May 20 and 21, 1957 and resulted in a verdict of $25,000 for plaintiff. Defendants moved to set aside this verdict and grant them a new trial on the ground that it was excessive. The motion was overruled and judgment was entered May 21, 1957 on the verdict. On June 11, 1957 defendants moved the court to vacate the judgment, set aside the verdict and grant them a new trial on the ground of after-discovered evidence. In support of this motion an affidavit of John F. Rixey, a member of the law firm of Rixey & Rixey, counsel for defendants, and an affidavit of Ida Sullivan, half sister of plaintiff, were filed. Whereupon on the same day plaintiff filed a motion to strike Rixey's affidavit and also filed her affidavit and that of her mother, Nancy T. Wise. After oral argument by counsel, the court overruled defendants' motion for a new trial. A writ of error was granted defendants to the judgment entered May 21, 1957.

The liability of defendants is not questioned, thus the facts relating to the collision will not be stated.

Plaintiff, who was 35 years of age, was taken from the scene of the accident to the hospital for emergency treatment and she re-

mained there for 15 days. Her neck was placed in traction with a three pound pully attached to a halter and her body was also placed in a cast. After leaving the hospital she was confined to her home for approximately one month and for several months she was required to wear a brace or corset during the day time. At the second trial she testified that she still suffered intense pain in her neck, back and extremities, had difficulty in sleeping, and found it necessary to take pills for that purpose most of the time.

Dr. George G. Hollins, an orthopedic surgeon, testified that he saw plaintiff on September 18, 1955, the day after the accident. X-rays disclosed a sprain of the cervical spine, sprain of the dorsal spine, sprain of the lumbar spine and contusions of the chest. He explained that for treatment of her neck it was placed in traction, and in order to immobilize the spine a plaster cast was placed over the entire trunk of her body. She complained of constant pain while in the hospital which complaint was consistent with her injuries. To relieve her suffering he prescribed several types of drugs. After she left the hospital he saw her periodically until March 13, 1957, at which time he considered she had reached "maximum improvement". His diagnosis at this time was that she had pain, tenderness and limitation of 15 degrees of straight left leg raising. In his opinion, she would permanently have pain at times in varying degrees.

Plaintiff was also treated by Dr. Robert H. Thrasher, a physician psychiatrist, who first saw her on June 14, 1956, and testified she was suffering from a traumatic neurosis. He stated he had seen her eight times and that her nervous condition was "somewhat better."

Dr. Arthur A. Kirk, an orthopedic surgeon, who examined plaintiff on February 7, 1957, estimated she would have 5 per cent permanent partial disability, in the form of a mild recurrent low back pain and a mild weakness of her lower back.

Dr. Bernard H. Raymond, a physician and surgeon, stated that she has a 10 per cent permanent disability of her cervical spine and a 15 per cent permanent disability of the lower spine.

Medical and other expenses resulting from her injuries amounted to approximately $2,000.

Defendants' petition for appeal poses two questions. They are: (1) whether "The verdict was excessive", and (2) whether "The Trial Court erred in refusing to award the defendants a new trial on the grounds of after-discovered evidence."

Counsel prosecuting this appeal, although a member of the law

firm which defended the action in the court below, did not participate in the trial of the case in that court. His appearance in the case began after he received an anonymous telephone call on June 6, 1957 informing him that plaintiff was involved in a prior automobile accident from which she suffered a serious back injury and a leg injury. It developed that the informant was Ida Sullivan, half sister of plaintiff. Counsel was frank to state at the bar of this court that he did not expect us to set the verdict aside on account of excessiveness. His candor is commendable. Based upon the evidence adduced at the trial, we cannot say that the verdict was excessive, even though it be large.

Defendants, however, earnestly contend that the trial court erred in not sustaining their motion for a new trial on the ground of after-discovered evidence.

The material portion of Rixey's affidavit made on June 10, 1957 and filed in the court below reads:

"On Thursday, June 6, 1957 about 5:30 p. m. I received a telephone call from an anonymous caller inquiring if our firm was handling the above case and stating that the caller had certain information concerning the plaintiff, Mrs. Rountree, which was pertinent to this case. A personal conference with the caller resulted in my being advised that the plaintiff was involved in an automobile accident in either 1938, 1939 or 1940 from which the plaintiff suffered a serious back injury and leg injury, which required her to be hospitalized. Since that time I am advised that the plaintiff has continuously complained of her back and that the accident which forms the basis of this suit was not the first injury to the plaintiff's back although she testified during the trial of the above case that she had never had any previous trouble with her back. At the present time a full investigation is being made to determine if such an accident did occur and whether or not the plaintiff did suffer a back injury in the previous accident in direct conflict with her testimony of May 20, 1957. Because the previous accident is supposed to have happened sometime ago, it has been difficult to locate the information as to the accident in the short period of time before the verdict in the above case becomes final."

The substance of Ida Sullivan's affidavit, made June 11, 1957 and also filed with the trial court follows: She is the half sister of plaintiff and they both had lived in Norfolk since January 1938, except for a two year period around 1948 affiant lived in Durham, North Carolina. During the years 1938, 1939 and 1940 plaintiff resided with her

parents and a brother. While residing with them plaintiff was injured in an automobile accident, causing her to be hospitalized in old St. Vincent's Hospital in Norfolk. She received injuries to her back and a leg which gave her considerable trouble and which she has continually complained of from that time until September 1955, when the accident in the instant case occurred.

While the present suit was pending affiant discussed plaintiff's injuries with her mother and inquired if anything would be said about the previous injuries plaintiff sustained and was advised not to mention them as nothing had been said. She recalled that plaintiff was hospitalized in Norfolk General Hospital in 1947 for an operation on one of her legs by Dr. John Vann. She believed a Dr. Hadley had removed a cyst from her leg prior to the operation by Dr. Vann. Plaintiff is able to do anything she desires to do. She drives an automobile, cares for her home and children, and on one occasion in the summer of 1956 she was seen by affiant diving from the shoulders of other persons into the water at Ocean View. Plaintiff has been married four times and has five children. Two of them are by a former husband, a Mr. Laughorn, and three by her present husband, Paul J. Rountree.

Plaintiff in her counter affidavit filed in the trial court, admitted that she was involved in an automobile accident in 1938 and received an injury to a leg, but not to her back. She stated there was no bone injury or any permanent injury to her leg, and that her present back injury resulted from the accident which is the basis of this suit. Nancy T. Wise, in her affidavit also filed in the lower court, made oath that plaintiff had never received any injury to her back except the one resulting from the collision on September 17, 1955.

On January 6, 1958 plaintiff filed with *this court* a motion to dismiss the writ of error with *supersedeas* awarded defendants on the ground that defendants' motion for a new trial on account of after discovered evidence was based solely on the affidavit of Ida Sullivan, which she alleges is conclusively false as shown by affidavits attached to her motion to dismiss the writ of error.

These affidavits include another of Ida Sullivan, made on December 14, 1957. In it she said that she has suffered from a nervous and mental disorder for many years and was treated for that illness by Dr. Robert H. Thrasher, a psychiatrist, in Norfolk General Hospital during 1955. As recently as July 1957 she attended the Norfolk Mental Hygiene Clinic. When she discussed plaintiff's condition with

Rixey and signed the affidavit on June 11, 1957, she was in an extremely nervous state, and her mental health was very poor. On account of differences which had arisen between her and plaintiff she wanted revenge on the latter. She was not sure of many of the statements made in her former affidavit. Although at the time she actually thought plaintiff might have suffered a back injury in 1938, she said she was mistaken in that belief.

Affiant also belived she was mistaken when she stated in her former affidavit that plaintiff had been complaining of her back and leg prior to the accident in the present case. Subsequent to the execution of her first affidavit, Rixey telephoned her from DePaul Hospital, where the records of old St. Vincent's Hospital were stored, and informed her the records revealed plaintiff had suffered a leg injury, but not a back injury. She then advised Rixey that she was perhaps mistaken about the statements made in her affidavit. She further stated that she was mistaken about the number of marriages plaintiff celebrated.

The affidavit of Dr. Robert H. Thrasher, made on December 21, 1957, discloses that Ida Sullivan was seen by him in the Norfolk General Hospital between the 16th and 27th of September, 1955, at which time she was suffering from a nervous condition.

Plaintiff made affidavit that she was known as Marie Shadle in 1940 and for several years prior thereto.

There is also attached to the motion to dismiss an affidavit of Helen F. Titus, custodian of the records of DePaul Hospital and as such custodian of the records of old St. Vincent's Hospital. She stated that the records disclose plaintiff was brought to St. Vincent's on March 2, 1940 suffering from multiple bruises of both legs and laceration of the scalp. She was treated for these injuries and discharged on March 4, 1940, when her condition was noted as improved. The records do not disclose injuries to the bones of the legs, or back injuries of any nature.

Can the affidavits attached to plaintiff's motion to dismiss the writ of error, which were not presented to or filed with the lower court, be considered by this court?

In 4 C. J. S. Appeal and Error, § 1377 d(3), pp. 1999, 2000, it is said:

"As a general rule, a court in passing on a motion to dismiss an appeal will be governed entirely by the record, and a motion to dismiss does not lie where, to support or resist it, proof is necessary

dehors the record. Evidence of facts outside the record, occuring after the rendition of the judgment in the court below and affecting the proceedings of the appellate court, will, where deemed necessary, be received and considered by such court for the purpose of determining its action; thus, extrinsic evidence is competent to show that the controversy or the substance thereof, has ceased to exist, and is moot, although such proof must be clear and satisfactory. Evidence dehors the record may also be received to show that appellant's right to prosecute the appeal has ceased, or to show matters relating to the service, signing, and settling of the case-made. Extrinsic evidence is likewise admissible to show that no real controversy exists between the parties, or that effectual relief cannot be granted by the reviewing court, or other matters."

Plaintiff cites *Ward* v. *Charlton*, 177 Va. 101, 12 S. E. 2d 791, as authority for considering extrinsic evidence by this court in support of her motion to dismiss. In that case Ward obtained a verdict of $800 against Charlton, owner of a tractor driven by Harper which collided with the car operated by Ward. The trial court set the verdict aside and an appeal was granted Ward. While the appeal was pending Harper sued Ward for personal injuries sustained by him. Ward filed a cross-claim against Harper for the identical cause of action for damages he had instituted against Charlton which was on appeal. The jury decided that neither party was entitled to recover against the other and judgment was entered on the verdict, which became final as time for appeal had elapsed. A certified copy of the undisputed record in that case was attached to the motion to dismiss the appeal pending. We held that since a court of competent jurisdiction had finally adjudicated that Ward could not recover of Harper, he could not recover of Harper's master, Charlton, whose liability, if any, depended upon Harper's liability under the doctrine of *respondeat superior*, and that Harper was estopped to ask this court to review the record and enter a judgment in his favor which admittedly would be in conflict with the final judgment entered on the identical cause of action.

There we said that in an appellate proceeding this court sits to review and to correct errors of lower courts; that in exercising such jurisdiction we are limited to the record of the proceedings which occurred in the lower court and certified to us, and that extrinsic evidence may not be received by this court to contradict or supplement the record. We further stated at page 107:

"But it is well settled in this State and elsewhere that an appellate court may consider matters which have occurred since the entry of the judgment appealed from to determine whether it will proceed to review the record before it. Of necessity these subsequent proceedings must be shown by extrinsic evidence not found in the record to be reviewed. In considering such extrinsic evidence and in determining whether it will proceed to a consideration of the proceedings below, the appellate court exercises appellate and not original jurisdiction."

In that case the extrinsic evidence was an uncontradicted court record. In our case it consists of disputed affidavits, which contradict the record. Under these circumstances the extrinsic evidence will not be considered here, and consequently the motion to dismiss the writ of error is denied.

■ The general principles controlling the awarding of a new trial based on after-discovered evidence are set forth in *Cab Association* v. *LaTouche*, 197 Va. 367, 89 S. E. 2d 320. There we quoted with approval from Burks Pleading and Practice, 4th Ed., § 324, pp. 601, 602, 603:

"* * * Applications for new trials are addressed to the sound discretion of the court, and are based on the ground that there has not been a fair trial on the merits.

"A new trial for after-discovered evidence is granted with great reluctance and with special care and caution. In order to justify a new trial for after-discovered evidence, (a) the evidence must have been discovered since the trial, (b) it must be material in its object and such as on another trial ought to produce opposite results on the merits, (c) it must not be merely cumulative, corroborative, or collateral, and (d) it must be evidence that could not have been discovered before the trial by the use of due diligence, and such as can be produced at another trial. This is undoubtedly the general rule, but exceptional cases may arise when the courts will find it necessary to depart from it. * * * So where the after-discovered testimony, if true, shows that the party's own evidence, or that of his principal witness, upon a material point, is fabricated, perjured or mistaken, or is in corroboration of the unsupported testimony of the accused in a criminal case, a new trial should be granted. At least, if the party has used due diligence to secure the evidence. The real object to be attained in granting a new trial is to prevent an erroneous judgment from becoming final. 'Where in the light of

after-discovered evidence, grave doubt is entertained as to the correctness of the verdict, and it seems probable that if the newly-discovered evidence had been before the jury a different verdict would have been reached on the merits, the verdict should be set aside.' In determining this, counter affidavits filed by the party in whose favor the verdict was found should be considered. * * *"

The substance of the affidavits produced and filed by defendants do not measure up to the required standards of the general rule. They fail to disclose that the after-discovered evidence could not have been discovered by the use of due diligence prior to the trial, which was approximately 20 months after the accident in the present case. Moreover, there is no showing that such evidence if adduced at another trial will probably produce a different verdict.

But defendants also contend that they come within the exception to the general rule in that the testimony of plaintiff and her witnesses upon a material point concerning plaintiff's health was either fabricated, perjured or, as in the case of statements made by her counsel, mistaken. In that connection plaintiff testified that at the time of the collision she was in perfect health. Nancy T. Wise, mother of plaintiff, and Rountree, plaintiff's husband, stated that before the accident plaintiff was in good health, but since then she has been unable to attend to her household duties. Defendants argue that Ida Sullivan's affidavit, given in support of their motion for a new trial, shows that plaintiff had been involved in a prior automobile accident from which she received injuries to her back and a leg which she continually complained of up to the time of the accident on September 17, 1955, and that around 1947 her leg was operated on by Dr. John Vann. This argument is answered by the record which discloses that neither plaintiff nor her witnesses were asked whether she had been involved in a previous accident, or had undergone an operation on the leg.

While Aiko King, a registered nurse affiliated with Norfolk General Hospital, was being cross-examined by defendants' counsel concerning plaintiff's hospital record in that institution, Louis B. Fine, of counsel for plaintiff interrupted and said:

"She had five children. She has been in the hospital five times in addition to that, and once for female—that is during her whole life."

Later on counsel for defendant asked the witness: "What does it say about the operation for female trouble in 1955?"

Whereupon plaintiff volunteered "I wasn't in there." At this

point Jerrold Weinberg, also counsel for plaintiff addressed the court as follows:

"If Your Honor please, to save time, the female operation was at Leigh Memorial Hospital. She has been to the hospital five times, had five children. She has had an appendectomy and she has had operation at Leigh Memorial. That is the extent of her hospitalization and if he can stipulate it and save all this time that Mr. Rixey might want to take up trying to make it sound like something—"

Defendants construe the two statements volunteered by counsel as an assertion that plaintiff had never been hospitalized in any institution other than Norfolk General Hospital and Leigh Memorial Hospital. If this be true, it is contradicted by Ida Sullivan's affidavit. Reading the statements out of context, such interpretation is plausible, but when considered in context, our conclusion is that the several confinements mentioned by counsel were in relation only to Norfolk General Hospital and Leigh Memorial Hospital.

Defendants rely heavily upon *Cab Association* v. *LaTouche, supra*, but the facts in that case are dissimilar to those in the case at bar. There Peggy LaTouche, plaintiff, denied at the trial that on a specified previous date she was involved in an accident in which she was injured, but later admitted that to be true in her counter affidavit filed in the trial court in opposition to a motion for a new trial. In the present case neither plaintiff nor her witnesses denied any prior accident in which plaintiff was involved. In fact they were never questioned about any previous accident. In the *LaTouche* case an official of the Cab Association filed an affidavit that a careful investigation was made of the circumstances of the collision and that such investigation did not produce any information which tended to show plaintiff had ever been injured in a previous accident, or that she had ever sustained back injuries. Furthermore, in that case counsel for defendant made affidavit that by due and reasonable diligence evidence pertaining to plaintiff's prior injuries could not have been discovered prior to the trial; that such evidence is material to the issues involved, can be produced at the trial, and would probably produce a different verdict. In our case, defendants' affidavits do not contain such allegations.

A new trial based upon after-discovered evidence is awarded with special care and with great reluctance. Motion for a new trial on that ground is addressed to the sound discretion of the trial court and

its judgment will not be disturbed unless there has been an abuse of discretion. We find that the lower court did not abuse its discretion in overruling defendants' motion for a new trial. Accordingly, the judgment appealed from is

*Affirmed.*