COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Kelsey and Retired Judge Rosenblatt[*]
Argued at Richmond, Virginia


MATTAPONI INDIAN TRIBE AND
 CARL T. LONE EAGLE CUSTALOW, ASSISTANT CHIEF
                                                                OPINION BY
v.       Record No. 0846-04-1                      JUDGE D. ARTHUR KELSEY
                                                                 MARCH 1, 2005
VIRGINIA MARINE RESOURCES COMMISSION
 AND THE CITY OF NEWPORT NEWS


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                          Marc Jacobson, Judge Designate

            Eric D. Albert (Hope M. Babcock; David S. Bailey; Georgetown
            University Law Center Institute for Public Representation; David S.
            Bailey, P.L.L.C., on briefs), for appellants.

            John K. Byrum, Jr., Assistant Attorney General (Jerry W. Kilgore,
            Attorney General; Roger L. Chaffe, Senior Assistant Attorney
            General; Carl Josephson, Assistant Attorney General, on brief), for
            appellee Virginia Marine Resources Commission.

            George A. Somerville (James E. Ryan, Jr.; M. Scott Hart; Stuart E.
            Katz, City Attorney; Allen L. Jackson, Chief Deputy City Attorney;
            Troutman Sanders, LLP, on brief), for appellee City of Newport
            News.


        This appeal presents the question whether a settlement agreed to by all litigants before the

circuit court, consummated by the entry of a consent dismissal order, moots appellate review of

the circuit court's earlier denial of the appellant's motion to intervene.  Under the circumstances

of this case, we hold that it does.


_____

        [*] Retired Judge Alan E. Rosenblatt participated in this case by designation pursuant to
Code § 17.1-400(C).

I.

In 1993, the City of Newport News applied for a permit from the Virginia Marine Resources Commission (VMRC) seeking permission to install a raw water intake on state-owned bottomlands in the Mattaponi River. A decade later, in 2003, the VMRC denied the permit, prompting Newport News to file an appeal to the circuit court under the Virginia Administrative Process Act (VAPA), Code § 2.2-4000 *et seq.* Newport News challenged the VMRC's decision, as well as the administrative procedures used to reach it.

The Mattaponi Indian Tribe and Chief Carl T. Lone Eagle Custalow (collectively, the Tribe) filed a motion to intervene in the circuit court VAPA appeal, seeking to defend the VMRC's permit denial. The Tribe argued, among other things, that the VMRC had no choice but to deny the permit — because granting it, the Tribe argued, would have violated tribal rights under the 1677 Treaty at Middle Plantation. See generally Mattaponi Indian Tribe v. Commonwealth, 43 Va. App. 690, 697-98, 601 S.E.2d 667, 671 (2004).

The circuit court denied the motion to intervene, finding the Tribe's assertions insufficient to warrant permissive intervention under Rule 2:15 or the VAPA.[1] The Tribe filed an interlocutory appeal seeking appellate review of the circuit court's order denying intervention. We dismissed the appeal as outside our jurisdiction under Code § 17.1-405. Mattaponi Indian Tribe v. Va. Marine Res. Comm'n, 43 Va. App. 728, 601 S.E.2d 686 (2004).

Newport News and the VMRC later agreed to settle the case. The settlement called for a remand of the permit application back to the VMRC for reconsideration pursuant to various agreed-upon procedures. In "accordance with" the settlement, the circuit court dismissed the VAPA appeal and remanded the matter to the VMRC "for further proceedings to be conducted

---

[1] After the filing of a petition for appeal, VAPA proceedings "shall be held as in a suit in equity and the rules contained in Part Two, where not in conflict with the code of Virginia or this part, shall apply . . . ." Rule 2:15 governs intervention in chancery actions.

- 2 -

as specified in the parties' settlement agreement." Following the entry of the final order, the Tribe filed this appeal challenging the circuit court's decision denying the motion to intervene.

## II.

Newport News and the VMRC contend their settlement and consent dismissal order moot any justiciable appellate controversy over the circuit court's denial of the Tribe's intervention motion. Even if the Tribe should have been allowed to intervene in the circuit court VAPA case, Newport News and the VMRC point out, that proceeding no longer exists — nor does the underlying dispute prompting the litigation. We find this reasoning persuasive.

Having settled their dispute, agreed to a final dismissal order, and forgone any further appeals, Newport News and the VMRC achieved perhaps the highest form of finality the law can give. To permit a putative intervenor to reopen this case, thereby forcing the settling litigants to continue litigating against their will, would be hardly in keeping with the principles of repose which normally accompany a final settlement. See Sierra Club, Inc. v. EPA, 358 F.3d 516, 518 (7th Cir. 2004) ("Officious intermeddlers ought not be allowed to hijack litigation that the real parties in interest can resolve to mutual benefit."). To be sure, it "has never been supposed that one party — whether an original party, a party that was joined later, or an intervenor — could preclude other parties from settling their own disputes." Lawyer v. Dep't of Justice, 521 U.S. 567, 578-79 (1997).

For these reasons, absent the assertion of an independent claim, "a permissive intervenor may not breathe life into a non-existent lawsuit." Horn v. Eltra Corp., 686 F.2d 439, 442 n.2 (6th Cir. 1982) (quoting McKay v. Heyison, 614 F.2d 899, 906 (3d Cir. 1980)) (internal quotation marks omitted). When "there is no longer any action in which appellants can intervene, judicial consideration of the question would be fruitless." United States v. Ford, 650 F.2d 1141, 1143 (9th Cir. 1981) (holding appeal moot where underlying action had been dismissed on plaintiff's

motion).  Under these circumstances, "an intervenor cannot keep a lawsuit alive which the original parties wish to end."  Citibank, N.A. v. State, 599 N.W.2d 402, 405 (S.D. 1999) (citation omitted); see also State ex rel. United States Steel Corp. v. Ross, 488 N.E.2d 876 (Ohio 1986) (dismissing appeal as moot due to final settlement between the named parties).

We acknowledge that a final order, even when the product of a settlement, may be upended on appeal by intervenors denied admission into a proceeding in which they had an inviolate statutory or common law right to participate.  See, e.g., Cont'l Baking Co. v. Charlottesville, 202 Va. 798, 803, 120 S.E.2d 476, 478 (1961) (vacating final order because, under an annexation statute, intervenors "shall be made parties defendant").  But that is not the situation here.  Nothing in Rule 2:15, the VAPA, or the enabling statutes for the VMRC gives the Tribe the *right* to intervene.  As the Tribe acknowledges,[2] its best argument relies on principles of permissive intervention — a matter within the sound discretion of the circuit court.  See generally Hudson v. Jarrett, 269 Va. ___, 606 S.E.2d 827 (2005) (noting that intervention decisions generally fall "within the discretion of the trial court"); Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 9.13, at 409 (3d ed. 1998) (observing that, under Rule 2:15, the "trial court has considerable discretion" in deciding intervention requests).

Finally, we also reject the Tribe's argument that any decision by the VMRC (granting or denying the permit) or by the circuit court (reviewing that decision on appeal under the VAPA) could prejudice any legally enforceable rights the Tribe has under the 1677 Treaty at Middle Plantation — thus presenting the Tribe with this one and only opportunity to vindicate its tribal rights under the treaty.  Though the VMRC may consider any matter within its statutory mandate, it had no administrative jurisdiction to *adjudicate* the Tribe's treaty rights.  See

---

[2] "This Court reviews the trial court's denial of intervention for an abuse of discretion." Brief of Appellants at 10.

Mattaponi Indian Tribe, 43 Va. App. at 708-09, 601 S.E.2d at 676 (holding that State Water Control Board has no statutory authority to adjudicate the Tribe's freestanding treaty claims); see also Zappulla v. Crown, 239 Va. 566, 571, 391 S.E.2d 65, 68 (1990) (concluding that issuance of a VMRC permit "does not amount to an adjudication of conflicting private property claims"). For similar reasons, no settlement between Newport News and the VMRC could prejudice any rights the Tribe has under the treaty. As the United States Supreme Court has explained:

> Of course, parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement. A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors; if properly raised, these claims remain and may be litigated by the intervenor.

Local Number 93, Int'l Assoc. of Firefighters v. Cleveland, 478 U.S. 501, 529 (1986).[3]

III.

For these reasons, we hold that the settlement between Newport News and the VMRC, consummated by the entry of a consent dismissal order, moots the Tribe's appeal of the circuit court's decision to deny the Tribe's motion to intervene.[4]

Appeal Dismissed As Moot.

---

[3] This appeal brings before us the circuit court's intervention decision, but not any question concerning the propriety of the final consent order. See generally Tidewater Psychiatric Inst. v. Buttery, 8 Va. App. 380, 383-84, 382 S.E.2d 288, 290 (1989) (finding a party denied permission to intervene is an "aggrieved party" within the meaning of Code § 17-116.05 (predecessor to Code § 17.1-405) only for purposes of appealing the intervention denial). We thus express no opinion on the Tribe's challenge to the trial court's adoption of the settlement terms in the final consent order.

[4] We grant the appellees' motion to strike those portions of the joint appendix which include documents outside the trial court record. As a general rule, an appellate court "sits to review and to correct errors of lower courts; that in exercising such jurisdiction we are limited to the record of the proceedings which occurred in the lower court and certified to us, and that extrinsic evidence may not be received by this court to contradict or supplement the record." Rountree v. Rountree, 200 Va. 57, 63, 104 S.E.2d 42, 47-48 (1958). Though exceptions exist to this settled principle, id. at 64, 104 S.E.2d at 48, none apply to this case.