Present:  Koontz, Kinser, Lemons, Millette, and Mims, JJ., and
Carrico and Russell, S.JJ.

VIRGINIAN-PILOT MEDIA COMPANIES, LLC
                                        OPINION BY
v.  Record No. 091661      SENIOR JUSTICE CHARLES S. RUSSELL
                                    September 16, 2010
DOW JONES & COMPANY, INC.

      FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                  A. Bonwill Shockley, Judge

     This appeal presents two questions:  (1) whether a
circuit court has subject matter jurisdiction to determine
whether a newspaper meets the requirements of Code § 8.01-
324(A) for the publication of legal notices and to enter an ex
parte order ruling on that subject, and (2) whether another
newspaper has standing to intervene to assert the court's lack
of subject matter jurisdiction.

                    Facts and Proceedings

     No material facts are in dispute and the appeal presents
pure questions of law.  Dow Jones & Company, Inc. (Dow) is the
publisher of a newspaper, the Wall Street Journal (the WSJ).
Virginian-Pilot Media Companies, LLC, is the publisher of a
newspaper, the Virginian-Pilot (collectively, the Pilot).

     On May 7, 2009, Dow filed in the Circuit Court of the
City of Virginia Beach a "Petition for Authority to Publish
Legal Notices and Other Legal Business Pursuant to Va. Code
§ 8.01-324(A)."  The petition was ex parte and gave no notice
to any others who might have an interest.  It recited that the

WSJ met each of the five requirements of Code § 8.01-324(A): (1) it had a bona-fide list of paying subscribers, (2) it had been published and circulated at least once per week for 24 consecutive weeks without interruption for the dissemination of news of a general legal character, (3) it had a general circulation in the area in which the notice is required to be published, (4) it was printed in English, and (5) it has a second-class mailing permit from the U.S. Postal Service. The petition asked for entry of an order granting the WSJ authority to publish legal notices and other legal business in the City of Virginia Beach.  Dow attached as exhibits to the petition copies of ex parte orders of a similar nature that it had secured in six other circuit courts in Virginia.

On May 14, 2009, the circuit court entered an ex parte order authorizing the WSJ to publish "ordinances, resolutions, notices and advertisements required by law in the City of Virginia Beach."  On June 4, 2009, the Pilot filed a "Motion to Intervene and to Set Aside Order."  The court heard arguments of counsel for Dow and the Pilot and ruled that (1) it had subject matter jurisdiction and (2) the Pilot lacked standing to challenge the court's jurisdiction because it could not show that it had any right germane to the proceeding or that it would suffer a cognizable legal injury arising out

2

of the court's order.  The court denied the motion to intervene and we awarded the Pilot an appeal.

## Analysis

Code § 8.01-324 provides, in pertinent part:

**Newspapers which may be used for legal notices and publications.** – A.  Whenever any ordinance, resolution, notice, or advertisement is required by law to be published in a newspaper, such newspaper, in addition to any qualifications otherwise required by law, shall:
    1.  Have a bona fide list of paying subscribers;
    2.  Have been published and circulated at least once a week for twenty-four consecutive weeks without interruption for the dissemination of news of a general or legal character;
    3.  Have a general circulation in the area in which the notice is required to be published;
    4.  Be printed in the English language; and
    5.  Have a second-class mailing permit issued by the United States Postal Service.
    B.  However, a newspaper which does not have a second-class mailing permit may petition the circuit court for the jurisdiction in which the newspaper is located for authority to publish ordinances, resolutions, notices or advertisements.

Subject matter jurisdiction is the power of a court to adjudicate a class of cases or controversies.  Article III, Section 1 of the Constitution of Virginia provides, in pertinent part:  "The legislative, executive, and judicial departments shall be separate and distinct, so that none shall exercise the powers properly belonging to the others . . . ."  Because of that basic constitutional principle, subject matter jurisdiction exists in the courts only when it has been

3

granted by a constitution or statute.  In re: Commonwealth of Virginia, 278 Va. 1, 11, 677 S.E.2d 236, 240 (2009).  The lack of subject matter jurisdiction cannot be waived and such jurisdiction cannot be conferred on a court by the litigants. The lack of subject matter jurisdiction may be raised at any time.  Id.

A judgment or order entered by a court that lacks jurisdiction of the subject matter is a nullity.  Morrison v. Bestler, 239 Va. 166, 169-70, 387 S.E.2d 753, 755 (1990); Humphreys v. Commonwealth, 186 Va. 765, 772, 43 S.E.2d 890, 893 (1947); Barnes v. American Fertilizer Co., 144 Va. 692, 705, 130 S.E. 902, 906 (1925).

Dow argues that Code § 8.01-324(A) should be construed to confer upon the circuit courts authority to decide whether a newspaper meets that section's requirements because circuit courts have broad jurisdiction over civil cases, courts are authorized by many statutes to order the publication of legal notices, and the courts must necessarily apply Code § 8.01-324(A) in order to determine what newspapers are appropriate for the publication of such notices.  Dow contends that, for those reasons, a circuit court's authority to entertain a petition such as Dow's arises by necessary implication.

The short answer to Dow's contention is that if the General Assembly had so intended, it knew how to include such

4

a provision.  Code § 8.01-324(B), the first sentence of which is quoted above, expressly confers upon the circuit courts subject matter jurisdiction to entertain a petition from a newspaper that lacks a second-class mailing permit for authority to publish legal notices.  Subsection (A) of that statute, with which we are here concerned, applies only to newspapers which, like the WSJ, "have a second-class mailing permit issued by the United States Postal Service."  Subsection (A) conspicuously lacks any such grant of jurisdiction to the circuit courts.  The General Assembly highlighted the distinction between the two subsections by separating them with the word "However."

Dow's reading of Code § 8.01-324(A) requires us to add language to the statute that the General Assembly declined to employ.  We have consistently refused to engage in that enterprise.  See, e.g., Jackson v. Fidelity & Deposit Co. of Md., 269 Va. 303, 313, 608 S.E.2d 901, 906 (2005) ("[c]ourts cannot 'add language to [a] statute the General Assembly has not seen fit to include'") (quoting Holsapple v. Commonwealth, 266 Va. 593, 599, 587 S.E.2d 561, 564-65 (2003)).  The maxim expressio unius est exclusio alterius applies when mention of a specific item in a statute implies that omitted items were not intended to be included.  Turner v. Wexler, 244 Va. 124, 127, 418 S.E.2d 886, 887 (1992).  "The question here is not

5

what the legislature intended to enact, but what is the meaning of that which it did enact.  We must determine the legislative intent by what the statute says and not by what we think it should have said." Id. (quoting Carter v. Nelms, 204 Va. 338, 346, 131 S.E.2d 401, 406-07 (1963)).

We construe Code § 8.01-324(A) to lack any grant of subject matter jurisdiction to the circuit courts, in contrast to the express grant of jurisdiction made by the subsection that follows it.  Section 8.01-324(A) is not, as Dow contends, rendered meaningless or superfluous by that construction.  The purpose of Code § 8.01-324(A) is to set standards for the guidance of those charged with the responsibility of publishing legal notices in order to achieve the highest likelihood that fair notice will be given to parties in interest.  That subsection also provides a useful rule of decision in any litigation that may subsequently arise, in which the sufficiency of notice by publication is at issue.

Dow contended, in response to the Pilot's motion to intervene, that the Pilot lacked standing to challenge the circuit court's jurisdiction or to intervene in the case.  The circuit court agreed with Dow's position, holding that the Pilot "has not shown that it has or will suffer a cognizable legal injury arising out of the Order or that it has a right germane to this proceeding [and therefore the Pilot] lacks

6

standing to challenge this Court's jurisdiction . . . ."  Dow argues that the Pilot's injury would only consist of a possible increase in competition, which would fall far short of an "immediate, pecuniary, and substantial interest in the litigation, [but would rather be] a remote or indirect interest," citing Harbor Cruises, Inc. v. Corporation Comm., 219 Va. 675, 676, 250 S.E.2d 347, 348 (1979) and its progeny.

It is unnecessary to discuss the question of standing in the present case because a court's orders, entered in a case over which it has no subject matter jurisdiction, "are absolute nullities, and may be impeached directly or collaterally by all persons, anywhere, at any time, or in any manner; and may be declared void by every court in which they are called in question."  Barnes, 144 Va. at 705, 130 S.E. at 906.  "The lack of subject matter jurisdiction may be raised at any time during the proceeding, even by this Court sua sponte."  Earley v. Landsidle, 257 Va. 365, 371, 514 S.E.2d 153, 156 (1999).  "The point may be raised at any time, in any manner, before any court, or by the court itself."  Humphreys, 186 Va. at 772, 43 S.E.2d at 893.  The point may even be raised for the first time on appeal by the appellate court sua sponte.  Morrison, 239 Va. at 170, 387 S.E.2d at 756.

We do not depart in any manner from our decisions on the subject of standing, but hold only that they are not relevant

7

to the inquiry whether an order was entered by a court that lacked jurisdiction of the order's subject matter.

## Conclusion

For the reasons stated, we hold that the circuit court had no subject matter jurisdiction to enter the order in question here and that the order is, therefore, null and void. Accordingly, we will reverse the judgment of the circuit court and vacate the order.

Reversed and vacated.

JUSTICE LEMONS, with whom JUSTICE KINSER joins, dissenting.

For many years, this Court has held as one of its first principles that a party must have standing to bring a case to the Court for resolution. That is, until today. The majority states that "[i]t is unnecessary to discuss the question of standing in the present case because a court's orders, entered in a case over which it has no subject matter jurisdiction, 'are absolute nullities, and may be impeached directly or collaterally by all persons, anywhere, at any time, or in any manner; and may be declared void by every court in which they are called in question.' " (Citing Barnes v. American Fertilizer Co., 144 Va. 692, 705, 130 S.E. 902, 906 (1925)). I believe that the standing issue is dispositive and absolutely necessary to our consideration of this appeal.

8

Additionally, by deciding the case, the majority actually does decide the standing question, albeit incorrectly. The Pilot's lack of standing is apparent and should operate to deny this Court the ability to hear its claim. Therefore, I respectfully dissent.

After the circuit court entered an ex parte order authorizing the WSJ to publish legal notices, the Pilot filed a "Motion to Intervene and to Set Aside Order." The circuit court denied the Pilot's motion to intervene, finding that the Pilot lacked standing to challenge the court's jurisdiction because "[i]t has not shown that it has or will suffer a cognizable legal injury arising out of the Order or that it has a right germane to this proceeding."

Standing is a dispositive issue on appeal; if a party lacks standing, this Court will not consider the merits of the case. See Kuznicki v. Mason, 273 Va. 166, 176, 639 S.E.2d 308, 312-13 (2007). A stranger to an action may not intervene and assert a claim unless that claim is "germane to the subject matter of the proceeding." Rule 3:14. "In order for a stranger to become a party by intervention, he must 'assert some right involved in the suit.' " Layton v. Seawall Enters., Inc., 231 Va. 402, 406, 344 S.E.2d 896, 899 (1986) (quoting William M. Lile, Lile's Equity Pleading & Practice 91 (3d ed. 1952)). Rule 3:14 is a specific Rule enacted by this

9

Court to govern the right of strangers to intervene.[1]  "[T]he Rule's history includes a strong adherence to limiting intervention to those parties who are legitimately plaintiffs or defendants . . . because the nature of their claim includes some right that is involved in the litigation."  Hudson v. Jarrett, 269 Va. 24, 34, 606 S.E.2d 827, 832 (2005).

In Hudson, we held that the trial court erred in allowing a stevedoring company and its workers' compensation insurance carrier to intervene in a personal injury action because their claim did not present a right involved in that proceeding; therefore, they "fail[ed] to meet these conditions [of the Rule]."  Id.  Similarly, in Eads v. Clark, we denied an attorney's motion to intervene in an action to collect attorney's fees from a former client, finding that he was merely a bystander to the action and that his claim for fees was not germane to the underlying proceeding.  272 Va. 192, 196, 630 S.E.2d 502, 504 (2006).

The same conclusion must be reached with respect to the Pilot's claim here.  The Pilot argues that it is entitled to

---

[1] Former Rule 3:19 was a law rule with language identical to former equity Rule 2:15. Former Rule 3:19 was repealed effective January 1, 2006, when Rule 3:1 became effective, providing that "[t]here shall be one form of civil case, known as a civil action." The provisions of former Rule 3:19 are now contained in present Rule 3:14.  See Eads v. Clark, 272 Va. 192, 196 n.3, 630 S.E.2d 502, 504 n.3 (2006) (discussing Rule 3:14 and its predecessor, former Rule 3:19).

intervene "as a newspaper of general circulation," "as a corporate citizen," and under "due process, fairness, and comity." However, as a stranger to the action, the Pilot may not intervene unless it "assert[s] some right involved in the suit." Eads, 272 Va. at 196, 630 S.E.2d at 504. Clearly, it is not enough that the Pilot may be adversely affected by WSJ's competition. A competitor's business interests are not sufficient to establish a cognizable legal interest in a pending lawsuit. The Pilot is unable to assert a cognizable legal right or claim germane to the subject matter of this proceeding. Therefore, in accordance with our previous decisions, the circuit court correctly denied the Pilot's motion to intervene for lack of standing.

However, the majority disregards the issue of standing altogether, stating that because the circuit court lacked subject matter jurisdiction, its Order is void ab initio. Quoting Barnes, the majority suggests that these orders "are absolute nullities, and may be impeached directly or collaterally by all persons, anywhere, at any time, or in any manner; and may be declared void by every court in which they are called in question." 144 Va. at 705, 130 S.E. at 906.

While it is true that a lack of subject matter jurisdiction may be raised at any time, either by a party or by a properly reviewing court sua sponte, it is a misreading

11

of Barnes to conclude that a stranger to the action may challenge an order as void ab initio.  The right to attack the validity of a judgment is limited either to the parties themselves, the court, or to "those strangers who, if the judgment were given full credit and effect, would be prejudiced in regard to some pre-existing right."  Evans v. Asphalt Roads & Mat'ls Co., 194 Va. 165, 174, 72 S.E.2d 321, 326 (1952) (quoting 1 Abraham C. Freeman, A Treatise on the Law of Judgments § 319, at 636 (5th ed. 1925)).  The Pilot is neither a party to the original action, nor did it have the requisite standing to intervene.  Consequently, the Pilot has no standing to challenge the validity of the circuit court's Order.

The majority cites several cases to support the conclusion that any stranger may challenge a lack of subject matter jurisdiction; however, in each case, the parties were already properly before the court.  No case cited by the majority involved a challenge by a stranger not properly before the court.

In Earley v. Landsidle, 257 Va. 365, 514 S.E.2d 153 (1999), we considered whether the trial court had subject matter jurisdiction to consider the Attorney General's petition for a writ of mandamus to compel the state comptroller to make monthly allowance payments to legislators.

Two clerks to the Virginia House of Delegates and Senate of Virginia, whom the Attorney General sought to add as parties, challenged the issue of subject matter jurisdiction.   Id. at 368, 514 S.E.2d at 155.  We held that the statute in question did not provide the court with the authority to hear the Attorney General's petition.  Id. at 371, 514 S.E.2d at 156. We decided the challenge to subject matter jurisdiction in a context where it was clear that the party challenging jurisdiction had standing to do so.

The majority also cites Morrison v. Bestler, 239 Va. 166, 173, 387 S.E.2d 753, 758 (1990), where the defendant physician argued that the trial court lacked subject matter jurisdiction to hear the plaintiff's claim of malpractice.  We affirmed the trial court's subject matter jurisdiction.  Just as in Early, the doctor challenging subject matter jurisdiction had standing and was properly before the court.

Likewise, in Humphreys v. Commonwealth, 186 Va. 765, 771-72, 43 S.E.2d 890, 893 (1947), we considered whether the trial court lacked subject matter jurisdiction to convict Humphreys of two counts of contributing to the delinquency of a minor. The issue of jurisdiction was raised by the Commonwealth, which had standing to raise it.  Id.

Finally, Barnes involved a petition for attachment brought against O.O. and Laura Barnes, husband and wife, by

13

American Fertilizer Company, a creditor of the husband. 144 Va. at 696-97, 130 S.E. at 903. The validity of American Fertilizer's attachment depended on two prior divorce decrees to which the company was not a party. Id. at 697-98, 130 S.E. at 904. American Fertilizer argued that the divorce court exceeded its subject matter jurisdiction when it issued the decrees. Id. at 705, 130 S.E. at 906. While American Fertilizer was not a party to the divorce proceedings, as a creditor of the husband under loan agreements predating the divorce, it clearly had a pre-existing right that was adversely affected by the property settlement provisions of the divorce decrees granting the wife sole ownership of the husband's real property that would otherwise have been available under contractual and statutory creditor's rights to satisfy the husband's debt. Id. at 699-700, 130 S.E.2d at 904.

In explaining how the divorce court's jurisdiction was open for consideration in the subsequent attachment litigation initiated by American Fertilizer, this Court in Barnes used the language cited by the majority here, id. at 705, 130 S.E.2d at 906, but the Court never suggested that the company lacked standing, nor did it find that the company was a stranger having no pre-existing right that was adversely affected by the decrees it argued were void. Viewed in that

14

light, the Court's recitation that orders issued without subject matter jurisdiction are void <u>ab</u> <u>initio</u> and are potentially subject to attack by third persons did not expressly or impliedly hold that persons without standing can challenge prior orders collaterally, and did not abrogate the traditional limitation of such challenges to persons with pre-existing rights adversely affected by the prior decree being attacked. No case cited in <u>Barnes</u> involved a challenge by a person without such standing,[2] and any broader implication of the language in <u>Barnes</u> is dicta.

Moreover, in every opinion by this Court citing the aforementioned passage in <u>Barnes</u>, the party seeking to set aside an order as void <u>ab</u> <u>initio</u> had standing to present the issue to the court.

Most recently, in <u>Collins v. Shepherd</u>, 274 Va. 390, 402, 649 S.E.2d 672, 678 (2007), the petitioner argued that the circuit court's order dismissing his personal injury claim was

---

[2] <u>See</u> <u>Shelton v. Sydnor</u>, 126 Va. 625, 634, 102 S.E. 83, 87 (1920) (dismissing petitioner's direct attack on the subject matter jurisdiction of the lower court); <u>Seamster v. Blackstock</u>, 83 Va. 232, 235, 2 S.E. 36, 38 (1887) (judgment affecting land title in prior proceeding found without jurisdiction on claim of heirs who had been parties to the prior county court action); <u>Wade v. Hancock</u>, 76 Va. 620, 626 (1882) (trial court order held beyond statutory jurisdiction on direct appeal by parties who participated in the case below); <u>Neale v. Utz</u>, 75 Va. 480, 488 (1881) (refusing to vacate the lien of a creditor's judgment because the lower court had valid jurisdiction).

15

void _ab_ _initio_ for lack of subject matter jurisdiction.  We agreed, finding that the "mode of procedure" utilized by the circuit court was unlawful, rendering the dismissal order void.  _Id._  The case did not involve a challenge by a person without standing.

The case of _Janvier v. Arminio_, 272 Va. 353, 364-65, 634 S.E.2d 754, 760 (2006), involved a claim by the defendant doctor that the circuit court lacked jurisdiction to enter the patient-plaintiff's nonsuit order.  We held that the plaintiff's failure to provide notice to the defendant of a second nonsuit order did not deprive the trial court of jurisdiction to enter it.  _Id._ at 367, 634 S.E.2d at 761.  Therefore, the trial court was incorrect in holding that order void _ab_ _initio_.  _Id._  The case did not involve a challenge by a person without standing.

In _Singh v. Mooney_, 261 Va. 48, 51-53, 541 S.E.2d 549, 551-52 (2001), we clarified the difference between orders which are void _ab_ _initio_ and those which are merely voidable.  We held that the trial court's nonsuit order was voidable and had to be challenged by the defendant within the 21 days that the trial court still had jurisdiction pursuant to Rule 1:1.  _Id._  The case did not involve a challenge by a person without standing.

Similarly, in Commonwealth v. Smith, 230 Va. 354, 356, 337 S.E.2d 278, 279 (1985), the defendant challenged this Court's subject matter jurisdiction, contending that the Commonwealth had no right to appeal the Court of Appeals' decision allowing the defendant's release on bond.  We held that our jurisdiction was valid because the Commonwealth was allowed to appeal a judgment of the Court of Appeals admitting a convicted defendant to bail. Id. at 360, 337 S.E.2d at 281. The case did not involve a challenge by a person without standing.

The case of Watkins v. Watkins, 220 Va. 1051, 1054, 265 S.E.2d 750, 752 (1980), involved a divorce proceeding where the husband argued that the trial court lacked subject matter jurisdiction to enjoin him from disposing of certain shares of stock.  We agreed and held that the portion of the final decree enjoining the husband was void.  Id. at 1055, 265 S.E.2d at 753.  Again, the case did not involve a challenge by a person who did not have standing.

In Leonard v. Boswell, 197 Va. 713, 719, 90 S.E.2d 872, 876 (1956), we held that the trial court had subject matter jurisdiction in a partition suit and therefore had authority to appoint commissioners to act on behalf of the parties.  The case did not involve a challenge by a person who did not have standing.

17

In Nolde Bros., Inc. v. Chalkley, 184 Va. 553, 558, 35 S.E.2d 827, 829 (1945), a defendant company argued that the trial court lacked subject matter jurisdiction to hear the plaintiff's claim. We held that the trial court had no jurisdiction to determine the controversy because the statute clothed the Industrial Commission of Virginia with exclusive jurisdiction. Id. at 569, 35 S.E.2d at 834. The case did not involve a challenge by a person who did not have standing.

Finally, in Aetna Casualty & Surety Co. v. Board of Supervisors, 160 Va. 11, 27, 168 S.E. 617, 620 (1933), the plaintiffs sued the surety for liability on bonds issued by the county treasurer. The circuit court held that the surety was relieved from liability. Id. at 26, 168 S.E. at 620. We reversed and held that the circuit court's order was "void and ineffective" because the circuit court was without power or jurisdiction to enter the order. Id. at 47, 168 S.E. at 627. Again, the case did not involve a challenge by a person who did not have standing.

This Court has cited Barnes eight times regarding standing, and on each occasion the party asserting a lack of subject matter jurisdiction was properly before the court. No case involved a stranger's challenge to subject matter jurisdiction similar to the Pilot's claim before us here.

Additionally, in Evans, we held that a person without standing could not challenge a divorce decree because he had no interest in the proceeding when judgment was entered. 194 Va. 165, 177, 72 S.E.2d 321, 328 (1952). Evans involved a workers compensation action brought after an employee was killed in an accident arising out of his employment. Id. at 167, 72 S.E.2d at 322. A child from the employee's first marriage and the child's mother argued that the employee's divorce was "void for lack of jurisdiction." Id. at 169, 72 S.E.2d at 323. The lower court agreed, finding that only that child was entitled to compensation. Id. The employee's second wife appealed, and we held that the decree was not susceptible to attack by the child or his mother. Id. at 177-78, 72 S.E.2d at 328. "It seems clear that none of the appellees had any extant right that was prejudiced in the proceedings," and therefore "have not shown that they . . . would be permitted to make a collateral attack on the decree." Id.

In George v. King, 208 Va. 136, 137, 156 S.E.2d 615, 616 (1967), a husband argued that his wife's decree of divorce from her former husband was "void for want of jurisdiction." The husband sought an order declaring his subsequent "marriage" to the plaintiff to be a nullity. Id. On appeal, we held that the husband had no standing to attack the wife's

19

divorce decree because he "had no pre-existing interest to be adversely affected by the divorce decree."  Id. at 139, 156 S.E.2d at 617.  We held that in order for the husband to be able to attack the former decree, "it must appear that he had a legally protected interest which was adversely affected by the decree."  Id. at 138, 156 S.E.2d at 616-17 (internal quotation marks omitted).

Legal treatises on the issue are in accord with Evans and George.  As one author explains, "[a]s a general rule, a judgment will not be vacated or set aside at the motion of a third person, not a party to the action."  1 Henry C. Black, A Treatise on the Law of Judgments § 317, at 481 (2d ed. 1902).  However, such strangers may, in limited circumstances, challenge the judgment if they show "a real and substantial interest" in voiding the judgment.  Id. § 260, at 391.

> [I]n the case of strangers to the litigation, it is not every one who may impeach the judgment in a collateral proceeding.  The law does not permit wanton or unnecessary attacks upon its judgments, and they will stand as valid against any third person who fails to show that he has a real and substantial interest in avoiding the judgment, and one which the law is bound to protect.  As the cases express it, the rule against collateral attacks upon judgments does not apply to such third persons or strangers to the record as would be prejudiced in regard to some pre-existing right if the judgment were given full effect.

Id.  That rule is echoed in a similarly authoritative work, which states, "To permit third persons to become interested

20

after judgment, and to overturn adjudications to which the original parties made no objection, would encourage litigation, and disturb the repose beneficial to society." 1 Freeman, Law of Judgments § 258, at 521. A stranger will be allowed to impeach a judgment only if giving the judgment full credit and effect would prejudice that person or entity "in regard to some pre-existing right." Id. at § 319, at 636.

Therefore, the circumstances in which a stranger may challenge a void judgment are much narrower than the majority would hold. Such attack is not available to any person, but only those who can show they would be prejudiced in regard to some pre-existing right if the judgment were given full effect.

The effect of the majority holding in this case is truly far reaching. Pursuant to the majority holding, a person in Roanoke learning by newspaper account of a judgment rendered by the Circuit Court of the County of Fairfax could intervene in the appeal of the matter to the Supreme Court of Virginia for the sole purpose of asserting lack of subject matter jurisdiction, even though that person had no interest whatsoever in the merits of the case. This has never been the law in Virginia.

The concurring opinion recites the difficulty that is faced in this case. The old adage "hard cases make bad law"

21

comes to mind.  Often the phrase "judicial restraint" is used without proper definition.  The phrase embraces both substantive and procedural content.  This dissent is not the place for an extended discussion of the concept. However, the concept includes the well-established principle that the proper role of courts is to reject involvement in cases where it is clear that a party has no standing to bring the cause to the court.  We often chastise counsel and lower courts for violating established rules.  It is unwise for us to demonstrate a lack of the restraint we have often held as appropriate to our role. Unfortunately, the majority and the concurring opinions have done so in this case.

Whether consideration of this case involves "plucking it from thin air" may be rhetorically interesting, but it surely involves an illegitimate exercise of appellate review.  The Pilot has no standing and we should not violate our rules to reach the underlying question in this case.

I respectfully dissent from the majority opinion and the judgment of this Court.


JUSTICE MIMS, with whom SENIOR JUSTICE CARRICO joins, concurring.

This case presents a procedural Gordian knot:  the appellant has no standing, the appellee has no standing, the

circuit court had no authority, and its order is void.  In my view, the facts and prior proceedings compel the result reached by the majority opinion, in which I concur.

The circuit court exceeded its statutory and constitutional authority.  Va. Const. art. VI, § 1.  Code § 8.01-324(A) authorizes neither entry of the order dated May 14, 2009 nor Dow's underlying ex parte petition.  Thus, the putative order must be a nullity.

The dissenting opinion would leave this glaring error by the circuit court uncorrected because the Pilot has no standing to challenge it, either in this Court or below.  While the dissenting opinion capably recites the requirements our precedents establish for intervention in lawful, adversarial proceedings, none of those precedents address the double dilemma posed by this case.  Dow sought to proceed ex parte, therefore there was no adversary to contest its factual allegations or legal arguments, and, dispositively, the action Dow brought had no lawful foundation.[*]

---

[*] The General Assembly permits parties to proceed ex parte and courts to hear such proceedings in certain cases.  E.g., Code § 8.01-217 (providing ex parte proceedings to change a person's name).  Obviously, such lawful ex parte proceedings are not implicated in this case.  But the fact that Dow sought to proceed ex parte, without any adversary, amplifies the difficulty of imagining any entity that properly could challenge the order in this case under the standard the dissenting opinion would impose.  If the Pilot lacks the required standing, what hypothetical party could possess it?

23

We often have said that "in an appellate proceeding this court sits to review and to correct errors of lower courts." E.g., Rountree v. Rountree, 200 Va. 57, 63, 104 S.E.2d 42, 47 (1958); Bissell v. Commonwealth, 199 Va. 397, 400, 100 S.E.2d 1, 3 (1957). While that role does not empower us to scan the horizon for error or to ignore statutes, our prior decisions, or our Rules, it long has been established that putative orders such as the one entered by the circuit court in this case "may be declared void by every court in which they are called in question," Barnes v. American Fertilizer Co., 144 Va. 692, 705, 130 S.E. 902, 906 (1925), "even by this Court sua sponte." Earley v. Landsidle, 257 Va. 365, 371, 514 S.E.2d 153, 156 (1999).

We did not reach out and pluck this case from thin air. The error was made known to us through a petition for appeal. Whether this petitioner was the proper one to assign the error, we cannot look the other way once it is manifest. In a case such as this, where no party had a right to proceed, no court had authority to act, and no valid order could be entered, our inaction would make this Court accomplice to a lower court's exercise of jurisdiction contrary to the

Fortunately, this question is irrelevant since no party – including Dow – has standing in an action that has no lawful

24

constraints constitutionally placed on the judicial branch by the legislative.

I do not believe the result in this case will invite outside parties to challenge orders in subsequent cases unadvisedly.  As stated, our action today arises from peculiar circumstances:  an ex parte proceeding brought by a party who had no statutory right of action before a court that had no jurisdiction to hear it.  Thankfully that is not a common occurrence in the Commonwealth.

---

foundation.