PRESENT:  All the Justices

MICHELINA BONANNO

v.  Record No. 200963

JAMES LEROY QUINN, II

OPINION BY
JUSTICE WILLIAM C. MIMS
May 27, 2021

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals erred by dismissing a petition

for appeal filed by a person who was not a party in the proceeding from which the appeal was

taken.  We also consider whether the Court of Appeals abused its discretion by awarding

appellate attorney's fees under Rule 5A:30(b).

I.  BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Michelina Bonanno, Ph.D. is the mother of Elizabeth Quinn.  Elizabeth married James

LeRoy Quinn, II in 2013.  Elizabeth had a daughter from a previous relationship with Sean

Graham.  In a juvenile and domestic relations general district court order entered in 2014, Dr.

Bonanno and Elizabeth were awarded joint legal custody of the child, Elizabeth was awarded

physical custody, and Dr. Bonanno was awarded a visitation schedule.

Elizabeth died in October 2018.  In December, James filed a petition for adoption.  He

asserted that Graham's consent to the adoption was unnecessary under Code § 63.2-1202(H)

because of lack of visitation or contact, which is not disputed in this case.  He also asserted that

Dr. Bonanno's consent was unnecessary because she was not a parent of the child and

grandparents have no parental rights.

The circuit court entered an order of reference for an investigation under Code § 63.2-

1208.  A social worker employed by the Department of Social Services thereafter reported that

she had attempted contact with Dr. Bonanno by telephone several times in March 2019, resulting

in only exchanges of voicemail messages. She also sent a certified letter on March 13, which was signed for on March 20. After interviewing James and the child, the social worker reported favorably on their relationship and recommended that the court enter a final order of adoption without an interlocutory order and probationary period under Code § 63.2-1210.

In a supplemental memorandum to the court filed on April 12, the social worker reported that Dr. Bonanno contacted her by electronic mail on April 4, arranging to speak by telephone on April 10. The memorandum reported that in the telephone conversation, Dr. Bonanno denied knowledge of James's petition to adopt the child and denied consent to the adoption. It continued that Dr. Bonanno sent an electronic mail the next day elaborating her concerns, which the memorandum summarized for the court.

The circuit court entered a final order of adoption on April 30, 2019. James sent a copy of the order to Dr. Bonanno by electronic mail after 4:00 p.m. on May 21. On May 30, Dr. Bonanno filed a notice of appeal. On the same day, she filed a motion to unseal the proceeding and to vacate and set aside the final order. In the motion, she made several accusations about James, including that he had concealed his adoption petition from her. She alleged that she promptly retained counsel after she received the adoption order on May 21. She argued that the order was void due to fraud upon the court and lack of notice to a legal custodian. Alternatively, she argued that the court retained jurisdiction to alter the order within six months under Code § 63.2-1216. Finally, she argued that the adoption was not in the best interest of the child. She also filed a motion to stay the finality of the adoption order.

In July, Dr. Bonanno filed another motion asserting that the order was void ab initio on the ground that James had not fulfilled the procedural requirements for a step-parent adoption as required by Code § 63.2-1214.

Dr. Bonanno filed a petition for appeal in the Court of Appeals on September 12. Meanwhile, she sought a hearing in the circuit court on the motions she had filed there. At a September 20 hearing to determine whether the circuit court would hear her motions, James argued that the filing of the notice of appeal divested the circuit court of jurisdiction over the proceedings. Dr. Bonanno countered that the adoption order was void ab initio, and if the circuit court ruled accordingly, it would vitiate the proceedings in the Court of Appeals. The court thereafter issued a letter opinion stating that while a circuit court may consider whether an earlier order is void ab initio after the 21-day period provided by Rule 1:1 has elapsed, in this case Dr. Bonanno's appeal to the Court of Appeals divested the circuit court of jurisdiction in the matter.

On September 30, James filed a motion to dismiss in the Court of Appeals, noting that Dr. Bonanno had not filed a motion to intervene in the adoption proceeding below. He asserted that she had actual and constructive notice as a result of the Department of Social Services' attempts to contact her, and argued that as a non-party she had no standing to appeal.

Meanwhile, the circuit court entered an order on October 7 denying Dr. Bonanno a hearing on her motions for the reasons stated in its letter opinion. On October 23, Dr. Bonanno filed a second notice of appeal relating to the circuit court's October 7 order. The Court of Appeals consolidated the two appeals.

In an unpublished order, a panel of the Court of Appeals granted James's motion and dismissed the appeals. It ruled that because Dr. Bonanno had neither moved to intervene nor entered an appearance before entry of the final order, she was not a party to the proceeding below and so lacked standing to appeal. It denied her request for appellate attorney's fees but granted James's request. It remanded for the circuit court to consider an appropriate award under Rule 5A:30(b).

We awarded Dr. Bonanno this appeal.

## II. ANALYSIS

We review the Court of Appeals' interpretations of statutes and the Rules of this Court de novo. *LaCava v. Commonwealth*, 283 Va. 465, 469-70 (2012).

### A. STANDING TO APPEAL

Dr. Bonanno first asserts, in two of three assignments of error, that the Court of Appeals erred by granting James' motion to dismiss her appeals to that court on the ground that she was not a party to the proceeding below. We disagree.

Code § 17.1-405 provides that "[a]ny aggrieved *party* may appeal to the Court of Appeals from" an adoption order. (Emphasis added.) The dispositive issue is the meaning of the word "party."

The first step in addressing that issue is to note that "party" is not merely a synonym of "person." The Code of Virginia is replete with examples where the General Assembly has afforded certain litigation rights to either parties or persons. A cursory search reveals dozens of statutes where the General Assembly has used the term "aggrieved party" or "party aggrieved," and more than one hundred where it has used the term "aggrieved person" or "person aggrieved." This is a distinction with a difference.

For example, the Government Data Collection and Dissemination Practices Act, Code §§ 2.2-3800 through -3809, provides that "[a]ny aggrieved person may institute a proceeding for injunction or mandamus against any person or agency that has engaged, is engaged, or is about to engage in any acts or practices in violation" of the act, Code § 2.2-3809, thereby creating a private right of action to seek the specified forms of relief. This illustrates that there are no *parties* in the absence of a proceeding; the aggrieved person *becomes* a party by instituting it.

4

This principle is further demonstrated by the Administrative Process Act, Code §§ 2.2-4000 through -4032. Code § 2.2-4026(A) provides that "[a]ny *person* affected by and claiming the unlawfulness of any regulation or *party* aggrieved by and claiming unlawfulness of a case decision . . . shall have a right to the direct review thereof." (Emphases added.) A regulation has a restrictive effect by which a person may be aggrieved even in the absence of litigation. A case decision, however, binds only those who are parties to the case and whose rights have been adjudicated. Therefore, the statute limits those who may seek review of a case decision to those who are *parties* to that decision.

These examples illustrate that the General Assembly knows the difference between persons and parties. When it has shown that it knows and intends a difference between two terms by using them in different ways, *see Commonwealth v. Commonwealth ex rel. Hunter Labs., LLC*, 296 Va. 32, 38 (2018) (comparing the use of "proceeds" and "net proceeds" in statutes), we presume that it chose with care the words it used when it enacted the statute we are construing. *Addison v. Jurgelsky*, 281 Va. 205, 208 (2011).

The conclusion that the term "aggrieved party" in Code § 17.1-405 means that only a "party" may appeal to the Court of Appeals is only the first step in our analysis. The next step is determining what kind of "party" the General Assembly meant.

The general legal definition of "party" relevant here is "[o]ne by or against whom a lawsuit is brought; anyone who both is directly interested in a lawsuit *and* has a right to control the proceedings, make a defense, or appeal from an adverse judgment; litigant[;]" as in "a party to the lawsuit." Black's Law Dictionary 1350-51 (11th ed. 2019) (emphasis added). "'Those persons who institute actions for the recovery of their rights, or the redress of their wrongs, and those against whom the actions are instituted, are the *parties* to the actions.'" *Id.* at 1351

5

(quoting Oliver L. Barbour, A Summary of the Law of Parties to Actions at Law and Suits in Equity 18 (1864)) (emphasis in original).

There are other, specific meanings of "party" when modified by various adjectives that include not only actual litigants who have already been joined in a legal proceeding but, for example, those who could be joined, those who should be joined, or those who must be joined, but who have not been joined yet. Thus, "those who may be but need not be joined" are "proper parties." 1 Hamilton Bryson, Virginia Civil Procedure § 5.03[1][a][i], at 221, (5th ed. 2020). Those who are "materially interested in the subject matter of the litigation and who will be affected by the results" are "necessary parties." *Id.*; *accord Michael E. Siska Revocable Tr. ex rel. Siska v. Milestone Dev., LLC*, 282 Va. 169, 173 (2011). A necessary party should be joined except when

> it is practically impossible to join all parties in interest, and the absent parties are represented by others having the same interests, or where an absent party's interests are separable from those of the parties before the court, so that the court may enter a decree without prejudice to the rights of the absent party.

*Id.* at 176 (internal quotation marks omitted). And those "without whose presence the court cannot act in the case" are "indispensable parties." 1 Bryson, *supra*, § 5.03[1][a][i], at 221.

Precedent informs us that the General Assembly did not intend the word "party" in Code § 17.1-405 to include those who might, should, or must be joined as parties, but rather to include only those who actually have been so joined. As early as 1808, Judge Fleming wrote in *Wingfield v. Crenshaw*, 13 Va. (3 Hen. & M.) 245, 258-59 (1808) (opinion of Fleming, J.) (seriatim opinion), that the person who had obtained an appeal from a county court to a district court was not a party in the county court's proceedings, so he could not bring an appeal in the district court. The district court's judgment had to be reversed and the appeal quashed. *Id.* at 259. In his opinion, Judge Roane noted as we have above that the General Assembly used the

6

terms "party" and "person" differently in different statutes. *Id.* at 256 (opinion of Roane, J.) (seriatim opinion). It had used the term "party" in the statute under which the appellant in *Wingfield* brought the appeal to the district court, and that "[t]his term *party* is far more specific than the word *person* used in the preceding section." *Id.* (emphases in original). Thus, the reporter's syllabus synthesizing the seriatim opinions concludes that an appeal is not allowable "in behalf of a person, who *may be interested*, but whose name does not appear as a *party*, in the record of" the court from which the appeal is taken. *Id.* at 245 (emphases in original).

Nothing in Code § 17.1-405 indicates that the General Assembly intended to depart in that Code section from its longstanding history of using the terms "party" and "person" to mean different things, or to abrogate our precedents attributing significance to this difference in their usage. We therefore hold that the term "aggrieved *party*" in Code § 17.1-405 (emphasis added) confers standing to bring an appeal to the Court of Appeals only on those who were litigants joined in the proceeding from which the judgment appealed from was taken.[1]

This holding does not alter our prior cases allowing a person who has sought leave to intervene in a proceeding from appealing a ruling denying it. It is well settled that one

> who seeks to become a party, and is entitled to become a party to proceedings in which he is interested, and is erroneously rejected . . . should be regarded, for the purposes of appeal, as possessing the status of one who is a formal party to the proceedings in which his rights and interests are being litigated.

*Jones v. Rhea*, 130 Va. 345, 361-62 (1921). "The motion itself, for leave to file or to be made a party, is a proceeding in court, to which the mover is a party, if no others; and if his motion be overruled, he may except to and appeal from the ruling." *Id.* at 362 (internal quotation marks

---

[1] Accordingly, based on our review of Virginia statutes and precedents, we expressly reject the general legal definition that equates the terms "aggrieved party" and "person aggrieved." *See* Black's Law Dictionary 1351 (stating that the term "aggrieved party" is "[a]lso termed . . . 'person aggrieved'").

omitted). However, an appeal from the denial of a motion for leave to intervene brings only the subject of the motion and whether it should have been granted, not the merits of the case, before the appellate court. *Mattaponi Indian Tribe v. Virginia Marine Res. Comm'n*, 45 Va. App. 208, 214 n.3 (2005).

Accordingly, the Court of Appeals correctly granted James' motion to dismiss Dr. Bonanno's appeals in that court because she was not a party to the proceeding from which she sought to appeal. She therefore had no standing to invoke the jurisdiction of that court.

At oral argument, Dr. Bonanno emphasized that because the adoption proceeding was under seal in the circuit court, she did not know that James had filed a petition, or in what court, until she received the adoption order after the 21-day period provided in Rule 1:1 had elapsed. However, as noted above, the social worker's supplemental memorandum filed with the circuit court reported that Dr. Bonanno had denied previous knowledge of the adoption proceeding and denied consent to the adoption in their telephone conversation. This establishes for the purposes of this case, where Dr. Bonanno did not and could not adduce evidence to the contrary, that she was aware of a pending adoption proceeding no later than April 10, 2018, the date of that call. Further, while the certified letter signed for on March 20 did not state that an adoption proceeding was pending, it notified Dr. Bonanno that the social worker was undertaking an investigation "for the Arlington County Circuit Court." However, Dr. Bonanno undertook no steps until she filed her motions on May 30.

The circuit court thereafter ruled that it could not consider those motions because she had also filed a notice of appeal to the Court of Appeals.[2] Dr. Bonanno argues that the ruling was

---

[2] We note that these motions appear to remain pending below. That possibility does not deprive of us of jurisdiction in this case. The judgment of the Court of Appeals from which Dr. Bonanno appeals is final, and that is what is required by Code § 17.1-411. We express no

error but we again disagree. In *Walton v. Commonwealth*, 256 Va. 85 (1998), we held that a trial court is divested of jurisdiction upon the filing of a notice of appeal because the "'orderly administration of justice requires that when an appellate court acquires jurisdiction over the parties involved in litigation and the subject matter of their controversy, the jurisdiction of the trial court from which the appeal was taken must cease.'" *Id*. at 95 (quoting *Greene v. Greene*, 223 Va. 210, 22 (1982)). We clarified the seemingly categorical stance taken in *Walton* and *Greene* in *Velazquez v. Commonwealth*, 292 Va. 603 (2016). There we held that the fact that an appellate court has acquired jurisdiction does not necessarily divest the lower court of *all* jurisdiction. Rather, the lower court retains jurisdiction to do acts it is expressly empowered to do by statutes or the Rules of this Court within the periods of time provided for doing them by the statute or Rule. *Id.* at 614-15. Thus, a circuit court may continue to exercise jurisdiction within the 21-day period provided by Rule 1:1 even if a notice of appeal is filed earlier.[3]

However, in this case, Dr. Bonanno filed her notice of appeal after the 21-day period had elapsed and she has not cited any authority under which the circuit court may have retained jurisdiction after she filed it. She argues that Code § 63.2-1216 serves this purpose by providing that an adoption order may be challenged within six months after it was entered but that misinterprets the statute. Code § 63.2-1216 does not *extend* the period of time within which an adoption order may be challenged. To the contrary, its plain language imposes a deadline and statutorily *shortens* the period within which such challenges might otherwise be brought.

---

opinion as to whether or how the circuit court may dispose of them when it reacquires jurisdiction of the case on remand.

[3] We amended Rule 1:1(b) effective September 1, 2019 to more clearly address the authority of the trial court to address certain matters after a notice of appeal has been filed.

Dr. Bonanno also argues that the adoption order is void ab initio for several reasons. She quotes our opinion in *Virginian-Pilot Media Companies, LLC v. Dow Jones & Co., Inc.*, 280 Va. 464, 469-70 (2010), that such orders

> "are absolute nullities, and may be impeached directly or collaterally by all persons, anywhere, at any time, or in any manner; and may be declared void by every court in which they are called in question." *Barnes*[ *v. American Fertilizer Co.*, 144 Va. 692, 705 (1925))]. . . . "The point may be raised at any time, in any manner, before any court, or by the court itself." *Humphreys*[ *v. Commonwealth*, 186 Va. 765, 772 (1947)].

Accordingly, she continues, the Court of Appeals should have declared the adoption order void and we should do so now. We again disagree.

We recently clarified the scope of our *Virginian-Pilot Media* opinion in *Watson v. Commonwealth*, 297 Va. 347 (2019). In *Watson*, we emphasized that "no majority of this Court has ever held that standing is irrelevant when a judgment is challenged as void ab initio." 297 Va. at 352. Further, "even the plurality opinion in *Virginian-Pilot Media* limited its application to judgments challenged as void for lack of subject-matter jurisdiction." *Id.* Finally, the question of the circuit court's subject-matter jurisdiction was properly before us in *Virginian-Pilot Media* because the appellant had followed a valid method to bring the appeal: it had filed a motion to intervene in the circuit court, which denied the motion, and then appealed from the denial. *Id.* at 352-53.

Those circumstances are not present here. First, although Dr. Bonanno characterizes part of her argument that the adoption order is void ab initio as a claim that the circuit court lacked subject-matter jurisdiction, such jurisdiction "is the power granted through constitution or statute to adjudicate a class of cases or controversies." *Virginian-Pilot Media*, 280 Va. at 467. In *Virginian-Pilot Media*, the circuit court lacked subject-matter jurisdiction because the General Assembly had not created a cause of action or method of procedure for a publication to seek an

10

order declaring that it meets the qualifications in Code § 8.01-324 to print legal notices, nor had the General Assembly empowered any court to enter one. By contrast, circuit courts have power to adjudicate adoption petitions under Code §§ 17.1-513 and 63.2-1201. Second, Dr. Bonanno did not file a motion to intervene.

The Court of Appeals therefore correctly declined to consider Dr. Bonanno's arguments given the posture of the case there. However, although the Court of Appeals lacked jurisdiction to hear Dr. Bonanno's petition for appeal in that court, we do have jurisdiction under Code § 17.1-411 over her petition for appeal here because she was a party in the Court of Appeals and is aggrieved by its ruling against her. *See Jones*, 130 Va. at 343-64 ("A person must be a party, *and* aggrieved." (internal quotation marks omitted) (emphasis added)). Considering whether the adoption order was void for lack of subject-matter jurisdiction is therefore consistent with our holding in *Virginian-Pilot Media*. Nevertheless, as noted above, circuit courts have subject-matter jurisdiction to adjudicate adoptions, so there is nothing more for us to decide on that question.

To conclude our analysis of this issue, we reiterate that there is no error in the Court of Appeals' judgment and we will affirm it. We express no opinion as to whether the adoption order may be void ab initio for other reasons that may be presented collaterally, such as for extrinsic fraud under Code § 8.01-428(D). *E.g. Jones v. Willard*, 224 Va. 602, 607 (1993) (describing extrinsic fraud as "conduct which prevents a fair submission of the controversy to the court"); *McClung v. Folks*, 126 Va. 259, 269-70 (1919) ("What, then, is extrinsic or collateral fraud, within the meaning of this rule? Among the instances given in the books are such as these: Keeping the unsuccessful party away from court by . . . purposely keeping him in ignorance of the suit."). We also decline Dr. Bonanno's invitation at oral argument to opine

11

whether the proceedings in this case tolled the six-month limitations period provided in Code § 63.2-1216 while they were pending here and in the Court of Appeals. Those questions are not squarely presented to us from the procedural posture of this case.

Finally, in light of Dr. Bonanno's emphatic reliance on the language in *Virginian-Pilot Media*, which we took from *Barnes* and earlier cases, we reiterate our observation in *Watson* that the principle stated in *Virginian-Pilot Media* applies narrowly, only to orders entered without subject-matter jurisdiction. *Watson*, 297 Va. at 352. That limitation predated *Watson*. *See Virginian-Pilot Media*, 280 Va. at 469 (describing the order challenged there as "entered in a case over which [a court] has no *subject matter jurisdiction*") (emphasis added); *Barnes*, 144 Va. at 705 ("To the extent, therefore, that the court exceeded its authority, or *its jurisdiction, over the subject matter* embraced in the decrees, they are absolute nullities, and may be impeached directly or collaterally by all persons, anywhere, at any time, or in any manner; and may be declared void by every court in which they are called in question.") (emphasis added).

We go still further today, declaring that the language in *Barnes* that orders void even for lack of subject-matter jurisdiction may be challenged "by all persons, anywhere, at any time, or in any manner," 144 Va. at 705, is a rhetorical flourish that does not accurately state the law, now or at the time *Barnes* was decided. To the contrary, in *Wade v. Hancock*, 76 Va. 620 (1882), the earliest case cited for the principle in *Barnes*, we said "[a] void judgment is *ex vi termini* a nullity, and may be so declared and treated by this court, and every other, *when the validity or invalidity of the judgment is a question to be determined either in a direct or collateral proceeding*." *Id.* at 626. Thus, a challenge that an order is void ab initio, even for lack of subject-matter jurisdiction, may be raised only in a valid direct or collateral proceeding where the voidness of the order is properly at issue. This limitation is further demonstrated by *Shelton*

12

*v. Sydnor*, 126 Va. 625 (1920), also cited in *Barnes*, where we said that "[a] judgment rendered by a court which had no jurisdiction of the subject-matter is a nullity, *and may be so treated* by all persons anywhere at any time and in any manner. It has no existence as a valid judgment." *Id.* at 626.

The implication when reading *Shelton* and *Wade* together is that those who believe that an order is void because the court that entered it lacked subject-matter jurisdiction may take the risk of putting it to the test by violating it, at least when it was the product of an adversarial proceeding and is amenable to being violated. Then, if the party in whose favor it was rendered institutes a proceeding to enforce it against him or her, he or she may raise the argument that it is void and a nullity in defense. Of course, if the defense subsequently proves unsuccessful, he or she would then face the consequences of disobedience.

Alternatively, one who believes that an order affecting his or her rights is void may challenge it at less risk in an action seeking a declaratory judgment. *See*, *e.g.*, *Evans v. Smyth-Wythe Airport Comm'n*, 255 Va. 69, 71, 74 (1998) (affirming a declaratory judgment that an earlier order was void ab initio). The General Assembly did not enact Virginia's first declaratory judgment statute until 1922, after *Shelton* and *Wade* were decided. 1922 Acts ch. 517. We have also subsequently recognized that the 21-day period provided by Rule 1:1 does not apply to a motion to vacate or set aside a judgment on the ground that it was void ab initio when the motion was filed by a party to the proceeding in which the putative judgment was entered. *Collins v. Shepherd*, 274 Va. 390, 395, 402-03 (2007) (holding that Rule 1:1 did not bar a party from filing a motion to vacate a judgment more than 21 days after its entry when the judgment was void ab initio); *cf. Singh v. Mooney*, 261 Va. 48, 54 (2001) (holding that a circuit court lacked jurisdiction under Rule 1:1 over a motion to vacate after the 21-day period had elapsed because

13

the order being challenged was not void ab initio). *See also Burrell v. Commonwealth*, 283 Va. 474, 477, 479-81 (2012) (holding that a circuit court erred by denying a defendant's motion to vacate his sentence in a probation revocation proceeding because the sentencing order was void ab initio).

It is clear that these cases preceding *Barnes* and on which it was based do not support the broad statement there that voidness may be raised by "all persons, anywhere, at any time, or in any manner." There are limitations on where, when, and how such challenges may be brought in court, and by whom, and they existed when *Barnes* was decided. Consequently, we strongly discourage litigants from invoking that language in future proceedings.

## B. ATTORNEY'S FEES

Dr. Bonanno also asserts in her final assignment of error that the Court of Appeals abused its discretion by awarding James appellate attorney's fees under Rule 5A:30(b). We again disagree.

Rule 5A:30(b)(1) provides in relevant part that "[i]n any case . . . involving adoption under Chapter 12 (§ 63.2-1200 *et seq.*) of Title 63.2, a party may request an award of attorney fees incurred in the appeal of the case by making said request" in his or her brief to the Court of Appeals.[4] When such a request is made, "the Court of Appeals may award to a party who has

---

[4] The Rule allows any party to request an award of fees. Although Dr. Bonanno argues that the Court of Appeals should have awarded her fees, not James, she does not argue whether the word "party" as used in the Rule means a party in the Court of Appeals, a party in the proceeding appealed to the Court of Appeals, either, or both. Although, as noted above, she was a party in the Court of Appeals—she was the appellant there—her arguments do not present either the question of whether the Rule permitted an award of fees to her, or the question of whether the Court of Appeals had authority under the Rule or elsewhere to enter an award of fees *against* her if she were indeed not a "party" within the meaning of the Rule. We therefore do not express an opinion on those questions.

made such request, all of their attorney fees, or any part thereof, or remand the issue to the circuit court as directed in the mandate order for a determination thereof."  Rule 5A:30(b)(2).

Dr. Bonanno argues that the Court of Appeals should not have awarded James appellate attorney's fees because her arguments were not frivolous or advanced for an improper purpose. However, frivolousness or improper purpose are grounds for imposing sanctions under Code § 8.01-271.1, which may include an award of attorney's fees.  Frivolousness or improper purpose are not required for an award of appellate attorney's fees under Rule 5A:30(b).  To the contrary, "[i]n determining whether to make such an award, the Court of Appeals shall not be limited to a consideration of whether a party's position on an issue was frivolous or lacked substantial merit but shall consider all the equities of the case."  Rule 5A:30(b)(3).

When reviewing the decision of a lower court committed to its discretion, we do not substitute our judgment for that of the lower court.  *See*, *e.g.*, *Carter v. Commonwealth*, 293 Va. 537, 543 (2017) ("In evaluating whether a trial court abused its discretion, we do not substitute our judgment for that of the trial court.") (internal quotation marks and omission omitted). Rather, under the abuse of discretion standard, "the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011) (internal quotation marks omitted).  In this case, the Court of Appeals expressly stated that it had "reviewed and considered the entire record in this case" when it decided to award fees to James.  It thereby indicated that it had considered all the equities of the case as the Rule requires.

Dr. Bonanno also argues that the General Assembly recently recognized that legal custodians, including her, should be made parties to an adoption proceeding by amending Code

15

§ 63.2-1202 to that effect. 2020 Acts. ch. 3. This, she continues, reflects a public policy decision that it is inequitable to conduct an adoption proceeding without the participation of the child's legal custodian(s). However, the amendment she cites was not effective when James filed his petition for adoption. Under familiar principles, "retroactive application of statutes is disfavored and . . . statutes are to be construed to operate prospectively only unless a contrary intention is manifest and plain." *City of Charlottesville v. Payne*, 299 Va. ___, ____ (2021). No such intention appears in the enactment Dr. Bonanno cites.

Accordingly, on this record, the Court of Appeals did not abuse its discretion in awarding James appellate attorney's fees. We will remand the case to that court for remand to the circuit court for a determination and award of appropriate appellate attorney's fees incurred in the Court of Appeals and in the remand proceeding in the circuit court only, to the exclusion of the proceedings in this Court.

### III. CONCLUSION

For the reasons set forth above, we hold that there is no error in the judgment of the Court of Appeals. We therefore affirm its judgment and remand for further proceedings consistent with this opinion.

*Affirmed and remanded.*