Present:  Kinser, C.J., Lemons, Goodwyn, and Millette, JJ., and
Carrico and Koontz, S.JJ.[*]

COMMONWEALTH OF VIRGINIA

OPINION BY

v.    Record No. 100840    JUSTICE LEROY F. MILLETTE, JR.

March 4, 2011

MWANDO MICHAEL AMERSON

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Pursuant to the Civil Commitment of Sexually Violent
Predators Act (SVPA or Act), Code §§ 37.2-900 et seq., the
Commonwealth petitioned the Circuit Court for the City of
Virginia Beach to civilly commit Mwando Michael Amerson as a
sexually violent predator (SVP) following his release from
prison on a sexually violent offense.  The circuit court, by
agreed order, found Amerson to be an SVP.  A hearing was then
held to determine whether Amerson should be civilly committed
or conditionally released.  At the conclusion of the hearing,
the circuit court decided to conditionally release Amerson to
an out-of-state agency, the Court Services and Offender
Supervision Agency for the District of Columbia (CSOSA).  The
question presented is whether the circuit court had the
authority under the SVPA to conditionally release Amerson
outside the Commonwealth.

_____

[*] Justice Koontz presided and participated in the hearing
and decision of this case prior to the effective date of his
retirement on February 1, 2011; Justice Kinser was sworn in as
Chief Justice on February 1, 2011.

## I.   BACKGROUND

In December 1999, Amerson was convicted of attempted rape in the circuit court.  He was sentenced to five years' imprisonment, with all but 10 months suspended, and three years' supervised probation.  He was released from prison in March 2000.

In October 2002, while on probation for the 1999 offense, Amerson was arrested and charged with first-degree child sexual abuse in Washington, D.C.  He entered a plea of guilty to second-degree child sexual abuse and was sentenced to three years' imprisonment and three years' supervised probation.  While he was serving his sentence for the 2002 offense in the federal prison system, his probation for the 1999 offense was revoked in the circuit court.  Hence, after completing his sentence for the 2002 offense, he was transferred from the federal prison system to the Virginia Department of Corrections to serve the remainder of his sentence for the 1999 offense — four years and two months.

In November 2008, shortly before Amerson was scheduled to be released from prison, the Commonwealth, pursuant to the SVPA, petitioned the circuit court to civilly commit him as an SVP.  In July 2009, the circuit court, by agreed order, found Amerson to be an SVP and ordered the Department of Behavioral

Health and Developmental Services[1] (DBHDS) to prepare a report on possible alternatives to civil commitment in accordance with the SVPA.

Six months later, in January 2010, the circuit court held a hearing to determine whether Amerson should be civilly committed or conditionally released. During the hearing, two conditional release plans were presented: one had Amerson residing in Virginia and being supervised by DBHDS (the Virginia plan), and the other had him residing in Washington, D.C. and being supervised by CSOSA (the Washington plan). The Commonwealth opposed both plans, claiming, among other things, that Amerson would present an undue risk to public safety if he were conditionally released. Nevertheless, it argued, if Amerson were to be conditionally released rather than civilly committed, he could only be conditionally released pursuant to the Virginia plan because the SVPA does not permit an SVP to be conditionally released outside the Commonwealth. It also maintained that Amerson could not be transferred to CSOSA pursuant to the Interstate Compact for the Supervision of Adult Offenders (Interstate Compact), Code §§ 53.1-176.1 et seq., because he was no longer subject to supervision by the

---

[1] Prior to July 1, 2009, the Department's name was the "Department of Mental Health, Mental Retardation and Substance Abuse Services." It was changed to the "Department of

3

Commonwealth as the result of the commission of a criminal offense.

Amerson countered that he should be conditionally released, as opposed to civilly committed, because, after successfully completing state and federal sex-offender treatment programs, he no longer needed secure inpatient treatment. He asserted, moreover, that he should be conditionally released in accordance with the Washington plan because: (1) the individuals who would support him if he were conditionally released lived in Washington, D.C.; (2) CSOSA had agreed to supervise him under the Interstate Compact if he were conditionally released in Washington, D.C.; (3) he had been accepted by the University of the District of Columbia, where he intended to continue his studies in business accounting; and (4) he had two offers of employment in Washington, D.C.

After hearing the testimony of several expert witnesses and the arguments of counsel, the circuit court took a recess to call CSOSA to verify that, in the event that Amerson were conditionally released in Washington, D.C., the agency would notify DBHDS if he violated the conditions of his release. When the hearing resumed, the circuit court informed counsel that it had spoken with a supervisor at CSOSA who said that the

Behavioral Health and Development Services" effective July 1, 2009. See 2009 Acts chs. 813, 840.

4

agency had accepted Amerson under the Interstate Compact and that it would enforce all of the conditions of his release as set forth in the circuit court's order, including any condition requiring notification to DBHDS in the event of a violation. Apparently satisfied with the supervisor's representations, the circuit court ordered Amerson's conditional release to CSOSA under the Washington plan.

Following the hearing, the Commonwealth filed a motion to stay the execution of the circuit court's order conditionally releasing Amerson to CSOSA. The circuit court denied the motion to stay and entered its final order. The Commonwealth noted its appeal and filed with this Court a motion to stay the execution of the circuit court's final order. We granted both the Commonwealth's motion to stay and its petition for appeal on the following assignment of error:

> The trial court erred by ordering that Amerson be conditionally released as a sexually violent predator to reside and be supervised outside of the Commonwealth of Virginia without authority to do so and contrary to the SVPA.

## II. DISCUSSION

Whether the SVPA permits the conditional release of an SVP outside the Commonwealth is a question of statutory interpretation. As such, it " 'presents a pure question of law and is accordingly subject to de novo review by this Court.' " Warrington v. Commonwealth, 280 Va. 365, 370, 699 S.E.2d 233,

235 (2010) (quoting Jones v. Commonwealth, 276 Va. 121, 124, 661 S.E.2d 412, 414 (2008)).

" '[T]he primary objective of statutory construction is to ascertain and give effect to legislative intent.' " Conger v. Barrett, 280 Va. 627, 630, 702 S.E.2d 117, 118 (2010) (alteration in original) (quoting Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983)). " 'When the language of a statute is unambiguous, we are bound by the plain meaning of that language.' " Commonwealth v. Morris, 281 Va. 70,76, ___ S.E.2d ___, ___ (2011) (quoting Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007)). And " '[i]f a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.' " Id. (quoting Conyers, 273 Va. at 104, 639 S.E.2d at 178).

Moreover, although SVPA proceedings are civil, rather than criminal, in nature, we have held that the Act is subject to the rule of lenity because " '[c]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.' " Warrington, 280 Va. at 370, 699 S.E.2d at 235 (quoting Townes v. Commonwealth, 269 Va. 234, 240, 609 S.E.2d 1, 4 (2005)). It " 'must therefore be strictly construed.' " Id. (quoting Townes, 269 Va. at 240, 609 S.E.2d at 4).

6

The Commonwealth argues that the circuit court could not conditionally release Amerson to CSOSA under the SVPA because the Act contains no provision permitting the conditional release of an SVP outside the Commonwealth. Amerson concedes that the SVPA does not explicitly authorize the conditional release of an SVP outside the Commonwealth, but contends that it does so implicitly. He first points to the following language of Code § 37.2-912(A): "The court shall subject the respondent to the orders and conditions it deems will best meet his need for treatment and supervision and best serve the interests of justice and society." Amerson submits that this language demonstrates that the General Assembly understood that each SVP is different and thus intended to give courts discretion to "mold the shape of the SVPA to fit the SVP; not the SVP to fit the SVPA."

Next, Amerson points out that, under Code § 37.2-912, a conditional release order may be implemented by DBHDS "or, if the [SVP] is on parole or probation, the [SVP's] parole or probation officer." Because "'[p]arole or probation officer' is not preceded by a specifying term confining the officer to the Commonwealth of Virginia," Amerson argues, the General Assembly "le[ft] open the possibility that the conditions of release could be implemented by ANY parole or probation officer."

7

Lastly, Amerson points to Code § 37.2-909(A), which provides in relevant part:

> Any respondent committed pursuant to this chapter shall be placed in the custody of [DBHDS] for control, care, and treatment until such time as the respondent's mental abnormality or personality disorder has so changed that the respondent will not present an undue risk to public safety. [DBHDS] shall provide such control, care, and treatment at a secure facility operated by it or may contract with private or public entities, in or outside of the Commonwealth, or with other states to provide comparable control, care, or treatment.

Amerson contends that, if DBHDS may contract with another entity outside the Commonwealth to provide control, care, or treatment for a civilly committed SVP, then it surely may do so for a conditionally released SVP. After all, Amerson continues, had the General Assembly intended for every SVP to remain inside the Commonwealth, it could have said so in the SVPA, but "[t]here is no provision, code section, or even reference to a single word or term confining an offender to remain in Virginia."

We find Amerson's arguments unpersuasive for several reasons. First, while it is true that courts are given some discretion under the SVPA to set the conditions for release, they do not have the authority, as Amerson puts it, to "mold the shape of the SVPA to fit the SVP." A court's authority to civilly commit or conditionally release an SVP is wholly derived from and limited by the SVPA. Thus, a court may not go

8

beyond the authority granted in the Act in determining the proper course of action for an SVP, even if it believes that doing so would "best meet his need for treatment and supervision and best serve the interests of justice and society." Code § 37.2-912(A).

Second, although the SVPA does not define "parole or probation officer," we think it clear that the General Assembly was only referring to Virginia parole and probation officers. As the Commonwealth notes, the Act also does not define "Department of Corrections," "Attorney General," "community service boards," "judicial officer," and "law-enforcement officer." It is, however, manifest from the context in which those terms are used that they only refer to Virginia entities and personnel. Further, as the Commonwealth maintains, the General Assembly could not have intended to legislate with reference to entities and personnel over which it has no authority.

Third, Amerson reads too much into Code § 37.2-909(A). By its terms, that section only refers to the placement of SVPs who are civilly committed, not conditionally released. As Code § 37.2-909(A) demonstrates, had the General Assembly intended to allow DBHDS to contract with an entity outside the Commonwealth to monitor or supervise a conditionally released SVP, then it certainly knew how to include such a provision.

9

For us to adopt Amerson's reading of Code § 37.2-909(A), then, we would have "to add language to the statute that the General Assembly declined to employ." Virginian-Pilot Media Cos., LLC v. Dow Jones & Co., 280 Va. 464, 468, 698 S.E.2d 900, 902 (2010). Time and again, we have "refused to engage in that enterprise" because " '[w]e must determine the legislative intent by what the statute says and not by what we think it should have said.' " Id. at 468-69, 698 S.E.2d at 902 (quoting Carter v. Nelms, 204 Va. 338, 346, 131 S.E.2d 401, 406-07 (1963)).

Finally, when the SVPA is read as a whole, we believe it evident that the Act does not provide for the conditional release of an SVP outside the Commonwealth. For instance, as the Commonwealth points out, Code § 37.2-913(B), which addresses the execution of an emergency custody order for an SVP who has violated the conditions of his release, only contemplates the conditional release of an SVP inside the Commonwealth:

> The emergency custody order shall require a law-enforcement officer to take the respondent into custody immediately. A law-enforcement officer may lawfully go to or be sent beyond the territorial limits of the county, city, or town in which he serves to any point in the Commonwealth for the purpose of executing an emergency custody order pursuant to this section.

10

(Emphasis added.)  Had the General Assembly intended to permit the conditional release of an SVP in and outside the Commonwealth, we would expect a provision of the SVPA addressing the emergency custody of an SVP who was conditionally released outside the Commonwealth — but there is no such provision.

The circuit court recognized this problem, but nonetheless ordered Amerson to be conditionally released to CSOSA because, in its view, a capias could be issued for him if he violated the conditions of his release.  As the Commonwealth contends, a capias is not an adequate substitute for the retrieval mechanism laid out in Code § 37.2-913(B) because it cannot be served outside the Commonwealth.  But even if it were adequate, we find it unlikely that the General Assembly would have left it up to courts to devise such a substitute retrieval mechanism on an ad hoc basis.

In sum, we conclude that no provision of the SVPA authorizes the conditional release of an SVP outside the Commonwealth.  We therefore hold that the circuit court erred in conditionally releasing Amerson to CSOSA in accordance with the Washington plan.[2]

---

[2] Amerson also claims that the circuit court had authority to transfer him to CSOSA under the Interstate Compact.  We

11

III.  CONCLUSION

For the reasons stated, we reverse the judgment of the circuit court and remand the case in order to allow that court to determine whether Amerson should be conditionally released pursuant to the Virginia plan.

<u>Reversed and remanded.</u>

---

disagree for two reasons.  First, the Interstate Compact gives the Interstate Commission, not courts, the power "[t]o oversee, supervise and coordinate the interstate movement of offenders." Code § 53.1-176.2, art. V.  Second, the Interstate Compact does not apply to him because he is not "an adult placed under, or subject to, supervision as the result of the commission of a criminal offense."  <u>Id.</u>, art. II.  Rather, he is subject to supervision by the Commonwealth because he has been found to be an SVP under the SVPA – which is a civil, not a criminal, statutory scheme.  Code § 37.2-901.