COURT OF APPEALS OF VIRGINIA

Present:   Judges Russell, AtLee and Malveaux
Argued at Norfolk, Virginia

**PUBLISHED**

CHRISTOPHER PARRIS CABRAL

v.        Record No. 1186-17-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE MARY BENNETT MALVEAUX
JULY 17, 2018

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
Michael E. McGinty, Judge

Richard G. Collins (Collins & Hyman, PLC, on brief), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Christopher Parris Cabral ("appellant") was convicted of aggravated sexual battery, in

violation of Code § 18.2-67.3.[1]   On appeal, appellant argues the evidence was insufficient to support

the charge because there was no evidence that he used a deadly weapon.   For the reasons that

follow, we affirm appellant's conviction.

## I.  BACKGROUND

On August 31, 2015, the victim, T.V., began her morning run at approximately 5:20 a.m.

She ran south on Richmond Road in the City of Williamsburg, stopping about a quarter mile into

her run to adjust the arm band holding her phone.   While stopped, she observed a man jogging

toward her from the north, the direction of a restaurant.   T.V. backed off of the sidewalk into the

---

[1] Appellant was also convicted of attempted robbery, in violation of Code §§ 18.2-58 and
-26; strangulation, in violation of Code § 18.2-51.6; abduction with intent to defile, in violation
of Code § 18.2-48; possession of a weapon by a convicted felon, in violation of Code
§ 18.2-308.2; assault and battery, in violation of Code § 18.2-57; and possession of marijuana, in
violation of Code § 18.2-250.  Appellant does not challenge these convictions on appeal.

grass to let the man pass. Instead of passing, the man ran towards T.V., grabbed her left arm and shoulder with one hand, and pulled out an object with the other. T.V. knew the object to be a Taser because of the "very loud and audible" sound it made when activated. T.V. felt the man strike her stomach with the Taser. She was not incapacitated because "it was not fully powered." She began to fight, and the man "struck" her with the Taser two more times during the altercation.

The man dragged T.V. across the grass to a nearby parking lot where both fell to the ground. He covered her mouth, placed an arm around her throat, and wrapped his leg around her legs to prevent her from kicking. The man used his right hand to rub T.V.'s vagina "back and forth" over her clothing. He then told her that "he worked security . . . nearby" and that she "needed to learn that it wasn't safe for a woman to run on their own in the morning." The man turned T.V. away from him and told her to wait while he fled the scene. T.V. counted to five, turned around to get a look at the man as he ran back north, and then turned and began running south.

When T.V. felt comfortable, she stopped running and called 911. Officer Powell arrived and T.V. gave him a description of her attacker, which Powell provided to other officers. Officers found appellant, who fit the description of the man given by T.V., parked in the nearby restaurant parking lot and detained him. T.V. was able to identify appellant as her attacker by his appearance and voice.

Officers searched appellant's vehicle and recovered security apparel, including a uniform and badge, as well as a Taser. Officer Powell tested the Taser by pressing a button, and the Taser "admitted a charge," "sparked," and "made noise."

T.V.'s injuries included swelling to her neck, back, shoulders, and abdomen. The trial court found that T.V. had been "tased three times," and her abdominal swelling was "consistent with being tased in the abdomen."

## II. ANALYSIS

Appellant contends the evidence was insufficient to support the aggravated sexual battery charge because the Commonwealth failed to prove that the Taser he used qualifies as a "deadly" weapon for purposes of Code § 18.2-67.3.[2]

"To the extent that [an] issue . . . involves statutory interpretation, it is a question of law reviewed *de novo* on appeal." Grimes v. Commonwealth, 288 Va. 314, 318, 764 S.E.2d 262, 264 (2014) (italics added). "When construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." Cuccinelli v. Rector & Visitors of the Univ. of Va., 283 Va. 420, 425, 722 S.E.2d 626, 629 (2012) (quoting Commonwealth v. Amerson, 281 Va. 414, 418, 706 S.E.2d 879, 882 (2011)). "To best ascertain that intent, '[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language.'" Blake v. Commonwealth, 288 Va. 375, 381, 764 S.E.2d 105, 107 (2014) (alteration in original) (quoting Kozmina v. Commonwealth, 281 Va. 347, 349, 706 S.E.2d 860, 862 (2011)). "[P]enal statutes must be strictly construed against the Commonwealth and applied only in those cases clearly falling within the language of the statute." Branch v. Commonwealth, 14

---

[2] Appellant first presented this argument to the trial court in a motion for reconsideration. In the same motion, he also argued for the first time that the evidence was insufficient to prove that he used a Taser during the course of the assault. Appellant failed to include the transcript of the hearing wherein the trial court ruled on this motion. Thus, appellant has waived any argument on appeal that the evidence was insufficient to prove that he used a Taser. See Rule 5A:8(b)(4)(ii) (providing that "[w]hen the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission shall not be considered"). However, we will consider appellant's argument that the Commonwealth failed to prove that a Taser qualifies as a "deadly" weapon for purposes of Code § 18.2-67.3, because it raises a purely legal question that we review *de novo* on appeal.

Va. App. 836, 839, 419 S.E.2d 422, 424 (1992). However, "[t]he plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results." Id. "When analyzing a statute, we must assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.'" Toliver v. Commonwealth, 38 Va. App. 27, 32, 561 S.E.2d 743, 746 (2002) (quoting Cousar v. Peoples Drug Store, 26 Va. App. 740, 745, 496 S.E.2d 670, 672 (1998)).

Code § 18.2-67.3(A)(4)(c) defines aggravated sexual battery, in the context of the instant case, as an act of sexual abuse "accomplished against the will of the complaining witness by force, threat or intimidation, and . . . [t]he accused uses or threatens to use a dangerous weapon." Appellant contends that the Taser he used during the assault on T.V. is not a dangerous weapon for purposes of the statute. He argues the trial court should have interpreted "dangerous weapon" to be synonymous with "deadly weapon" because, while the General Assembly does not use the term "deadly weapon" in Code § 18.2-67.3, its use of "dangerous weapon" in other contexts supports analyzing the facts of this case using case law related to deadly weapons. In support of this argument, he notes that loaded firearms are "*per se*" deadly weapons. See Floyd v. Commonwealth, 191 Va. 674, 683, 62 S.E.2d 6, 10 (1950) ("There are . . . weapons such as a loaded pistol . . . which the court may pronounce as a matter of law a 'deadly weapon.'" (quoting Pannill v. Commonwealth, 185 Va. 244, 253, 38 S.E.2d 457, 462 (1946))). However, appellant notes, the Code also refers to firearms as dangerous weapons in certain places. See, e.g., Code § 18.2-248(C)(4)(b) (excluding persons from mandatory minimum punishment for unauthorized manufacture or distribution of, or possession with intent to manufacture or distribute, controlled substances when they did not "possess a firearm or other dangerous weapon"); Code § 18.2-283 (criminalizing carrying "any gun, pistol, bowie knife, dagger or other dangerous weapon . . . to a

place of worship while a meeting for religious purposes is being held"). Thus, appellant contends, the General Assembly's use of the term "dangerous weapon" in other statutory contexts supports the interpretation that "dangerous weapon" is used in the same manner as "deadly weapon."

Appellant is mistaken in his belief that "dangerous weapon" and "deadly weapon" are to be interpreted synonymously. The legislature has used both "deadly weapon" and "dangerous weapon" in Title 18.2 of the Code. See, e.g., Code § 18.2-58.1(B) (defining carjacking, in part, as "the intentional seizure or seizure of control of a motor vehicle . . . by the threat or presenting of firearms, or other deadly weapon"); Code § 18.2-287.01 (banning certain "dangerous weapon[s]," including "stun weapons," as defined elsewhere in Title 18.2, from airport terminals). It follows that the General Assembly could have used the term "deadly weapon" rather than "dangerous weapon" in Code § 18.2-67.3, but it did not. "[W]hen the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, [this Court] must presume that the difference in the choice of language was intentional." Sarafin v. Commonwealth, 288 Va. 320, 328, 764 S.E.2d 71, 76 (2014) (alteration in original) (quoting Zinone v. Lee's Crossing Homeowners Ass'n, 282 Va. 330, 337, 714 S.E.2d 922, 925 (2011)). Accordingly, the Commonwealth did not have the burden of proving that the Taser qualified as a "deadly weapon," just that the Taser was a "dangerous weapon" for purposes of Code § 18.2-67.3.

Title 18.2 of the Code does not define "dangerous weapon." Existing case law also does not provide a definition in the context of Code § 18.2-67.3. However, the language of Code § 18.2-67.3 is unambiguous, and thus we are bound by the plain language of the statute. "Dangerous" is defined as something that is "able or likely to inflict injury." Dangerous, Webster's Third New International Dictionary, Unabridged (2002). Here, the trial court found that T.V. had been "tased three times," and her abdominal injuries were consistent with having been tased there. Thus, as T.V. was injured

by the Taser, the device clearly qualifies as a "dangerous weapon" — something "able or likely to inflict injury" — under Code § 18.2-67.3.

Further, it is well established that "'[t]he Code of Virginia constitutes a single body of law, and other sections can be looked to where the same phraseology is employed' or the same underlying conduct is involved." Chapman v. Commonwealth, 68 Va. App. 131, 144 n.7, 804 S.E.2d 326, 333 n.7 (2017) (quoting King v. Commonwealth, 2 Va. App. 708, 710, 347 S.E.2d 530, 531 (1986)). The Code defines a "stun weapon" as "any device that emits a momentary or pulsed output, which is electrical, audible . . . in nature and which is designed to temporarily incapacitate a person." Code § 18.2-308.1. Officer Powell testified that the Taser found in appellant's vehicle emitted a "spark." The victim stated that she was "struck" with and "felt the shock of" the weapon, which was "very loud and audible" when appellant turned it on. Appellant used the Taser in order to incapacitate the victim as he grabbed her with his other hand. Accordingly, the Taser used against the victim during the crime meets the definition of a "stun weapon" under Code § 18.2-308.1.

Additionally, such "stun weapons as defined in Code § 18.2-308.1" are included as prohibited "dangerous weapons" in Code §§ 18.2-283.1 (making it "unlawful for any person to possess in or transport into any courthouse . . . dangerous weapon[s], including . . . stun weapons as defined in [Code] § 18.2-308.1") and -287.01 (making it "unlawful for any person to possess or transport into any . . . airport terminal in the Commonwealth . . . dangerous weapon[s], including . . . stun weapons as defined in [Code] § 18.2-308.1"). Therefore, in viewing the Code as a single body of law, as mentioned above, the inclusion of "stun weapons" as prohibited "dangerous weapons" in these code sections further supports our conclusion that the Taser in this case qualifies as a "dangerous weapon" under Code § 18.2-67.3.

In the instant case, as the instrument was a stun weapon and was able to inflict injury, the trial court did not err in finding that the Taser was a "dangerous weapon" for purposes of Code § 18.2-67.3(A)(4)(c).

### III.  CONCLUSION

We hold that a Taser, as used by appellant during the course of his assault on T.V., qualifies as a dangerous weapon pursuant to Code § 18.2-67.3 due to its classification as a stun weapon and its ability to inflict injury.  Accordingly, we affirm appellant's conviction.

Affirmed.