COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:    Judges Huff, Raphael and Lorish
Argued by videoconference


TODD LYNN LEWIS

v.        Record No. 0225-22-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE LISA M. LORISH
NOVEMBER 29, 2022


FROM THE CIRCUIT COURT OF FREDERICK COUNTY
Alexander R. Iden, Judge

Gregory W. Bowman for appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The distribution of controlled substances statute, Code § 18.2-248, gives the Commonwealth

the option to seek enhanced mandatory minimum penalties for certain drugs based on the quantity

of that drug.  The enhancement is generally triggered by the weight of "a mixture or substance

containing a detectable amount" of the drug—but the statute treats methamphetamine differently.

Lewis argues that there was insufficient evidence to convict him under Code § 18.2-248(C)(4)

because the Commonwealth failed to prove he possessed with the intent to distribute either ten

grams of pure methamphetamine or twenty grams of a mixture or substance containing

methamphetamine.  We agree, and so we reverse and remand for resentencing.

BACKGROUND[1]

Frederick County Sheriff's Deputy Holman received a report that a "group of males in two vehicles [were] possibly stealing a motorcycle," and he went to investigate. He watched as Lewis and a passenger, Emmet Presgraves, drove toward him in a blue pickup truck carrying a motorcycle as three men followed in another truck. Holman stopped both trucks, spoke to Lewis, and ultimately learned that Lewis did not have permission to take the motorcycle. So Holman arrested Lewis and the other men for theft.

Deputy Vorous arrived on the scene after receiving a call for assistance, and he conducted an inventory search of the trucks before they were towed. He saw that Lewis was wearing an empty holster on his hip and a "tank top" that had both a "Pagan insignia" and a "One Percenter patch."[2] In the blue pickup truck Lewis had been driving, Vorous found a pistol beneath the driver's seat and two firearms in the center console; the console also contained a Navy Federal Credit Union "name badge" with Lewis' name and photograph. Behind the passenger seat, Vorous found a closed duffel bag embossed with the Navy Federal Credit Union logo. Inside the duffel bag was a box of .45 caliber ammunition and several "Pagan" t-shirts matching Lewis' size, including one depicting the slogan, "Rotten to the Core." A front pocket of the duffel bag also had a receipt from a motorcycle dealership dated October 11, 2019, with Lewis' name on it. In another pocket, a pouch with a "black zippered container" held drug paraphernalia and "thirty plastic bags containing a white crystal substance" suspected to be methamphetamine.

---

[1] We review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

[2] At trial, Frederick County Sheriff's Investigator Kahle, qualified as an "expert in motorcycle gangs," testified that the "Pagans" were one of several motorcycle gangs active in Virginia. He also explained that members of motorcycle gangs commonly wear "One Percenter" patches, representing their belief that "they live outside of society's rules and norms" and are "not [among] the ninety-nine percent of law-abiding citizens."

Vorous also found two motorcycle club vests in the backseat, one with two notebooks resembling "ledgers" inside it. The front page of the first ledger was inscribed, "Rotten One Percent." The same ledger contained a "tracfone prepaid card" and a phone number listed beside the word "burner."[3] One of the ledgers also contained $700 in cash. Finally, Vorous found a wallet belonging to "Elizabeth Young" in the same truck. Lewis told the officers that it was not his truck and that the firearms did not belong to him.

Lewis was originally indicted for possession of "Methamphetamine, a Schedule II controlled substance, with intent to sell, give, or distribute same, in violation of Section 18.2-248," as well as possession of a firearm while in possession of methamphetamine with intent to distribute. Before trial, the Commonwealth moved to amend the indictment to "include ten grams or more of methamphetamine," arguing that Lewis had notice about the proposed amendment and that it did not "change the nature and character of the offense" but only "the weight involved." Lewis did not object to the amendment, which added the language "10g or more of" in front of the word methamphetamine on the indictment.

At trial, the Commonwealth presented evidence of everything just summarized, and also the testimony of Cristina Chilcott, an expert in forensic science and the identification of controlled substances from the Virginia Department of Forensic Science ("DFS"). Chilcott said that she examined the thirty bags containing suspected methamphetamine and prepared two certificates of analysis. Both were admitted as exhibits at trial. The first stated that the "contents" of twenty of the thirty bags of "off-white crystalline substance" were "analyzed separately and each was found to contain Methamphetamine (Schedule II); total net weight of the twenty: 10.5087 +/- 0.0660 grams of substance. A purity determination was not performed." The second amended certificate of

---

[3] At trial, Deputy Vorous testified that the term "burner" referenced a "burner phone," a colloquialism used to describe a cell phone "that can be easily destroyed" or discarded and cannot "be tracked."

analysis, prepared just before trial, added the clarification that "[t]he gross weight of the remainder was 7.2975 gram(s) including innermost packaging."

Chilcott testified that she followed standard operating procedures from the DFS in examining the contents of the twenty bags. When asked "what [she] found that substance to be," Chilcott said, "[t]wenty plastic bags were analyzed separately and each was found to contain methamphetamine which is a Schedule II controlled substance." Chilcott added that the "total net weight of the twenty was 10.5087 plus or minus 0.0660 of substance." Chilcott confirmed that this was the weight of the "off-white crystalline substance." In contrast, Chilcott explained that the "gross weight" of the ten other bags referenced in the amended certificate of analysis "include[ed] the inner most packaging" which was "the baggies themselves." Chilcott said she stopped after testing twenty of the bags because she got to the "ten gram threshold" in the sentencing guidelines, and the gross weight of the remaining bags showed that she would not hit the next "twenty gram threshold" even if she analyzed the remaining bags.

Lewis made a motion to strike after the Commonwealth rested, arguing that there was insufficient evidence that he possessed the methamphetamine found in the duffel bag in the backseat of a truck he did not own. After the trial court denied the motion, Lewis testified in his own defense.

Lewis acknowledged that he was a member of the Pagans "motorcycle club" and used the alias, "Rotten." But he denied knowledge of the methamphetamine or involvement with "drugs of any sort." Lewis explained that about a week before he was arrested, he bought a motorcycle part and placed the receipt in his "saddlebag" before going to work at Navy Federal Credit Union. Lewis took several duffel bags with his employer's logo which he intended to use as "door prizes" at club fundraising events. The next day, he visited the Pagans' clubhouse to leave his motorcycle for repairs. Lewis testified that he distributed the duffel bags to his friends, including Presgraves

and Elizabeth Young. He also removed the receipt from his saddlebag and placed it on a table before departing the clubhouse in Young's pickup truck. Lewis returned that Monday to retrieve his belongings but could not find the receipt or duffel bags.

Lewis testified that on the day of his arrest, he gathered a group of Pagan members to retrieve a friend's motorcycle using Young's pickup truck. He claimed that when police stopped him, he was unaware that the duffel bag was behind the passenger seat or that it contained his receipt. Lewis also denied ownership of the shirts found in the duffel bag, although he wore similar attire during his arrest, and the shirt inscribed "Rotten to the Core" matched his "road name."

Lewis admitted that he owned the notebooks and motorcycle vest found by the duffel bag, but said he used the notebooks for legitimate purposes. Lewis also claimed that the cash in the notebooks was from a recent "fundraising" event. He said that the word "burner" in his notebook referred to a "minute phone" he used to "stay in touch" with family during work. Finally, Lewis admitted that while he told police that none of the firearms belonged to him, he ultimately pled guilty to a related charge of a possessing a concealed weapon because "the truth of the matter [was] that [he] was guilty of that charge."

At the end of all the evidence, Lewis renewed his previous motion to strike without adding any specific arguments, and the trial court denied it. The jury convicted him on both counts.

Before sentencing, Lewis moved to set aside the jury's verdict. He argued that the Commonwealth had to prove that he possessed at least ten grams of "actual methamphetamine" for Code § 18.2-248(C)(4)'s mandatory sentencing provision to apply. He contended that because the Commonwealth did not test all of the suspected methamphetamine or determine its "purity," the evidence failed to prove the necessary amount. The trial court took up this motion at the sentencing hearing, and concluded that Lewis was convicted under the "first part" of the statute—"ten grams or more of methamphetamine, its salts, isomers, or salts of its isomers"—and that "[t]here is no

Virginia Law requirement of purity, and the Court is not going to add one."  And the trial court agreed with the Commonwealth that Lewis waived the issue by not objecting to the introduction of the certificate of analysis at trial, which expressly stated that "a purity determination was not performed."  Accordingly, the trial court denied the motion to set aside the verdict, and sentenced him, in accordance with the jury's verdict, to twenty total years of incarceration and twelve months of jail.[4]  Lewis appeals.

ANALYSIS

Lewis first argues that there was insufficient evidence to prove he constructively possessed the methamphetamine in the duffel bag.  If we disagree, Lewis argues he should be resentenced without the mandatory minimum required by Code § 18.2-248(C)(4) because the Commonwealth failed to prove a drug weight of either "ten grams or more of methamphetamine, its salts, isomers, or salts of its isomers" or "twenty grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers."

I. The evidence was sufficient to show Lewis constructively possessed the methamphetamine.

Lewis argues that the lack of circumstantial evidence rendered the evidence insufficient to sustain his convictions.  We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'"  *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).  "[T]he relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

_____

[4] Lewis was also convicted on a plea of guilty of misdemeanor possession of a concealed weapon arising from the same incident.  He does not challenge that conviction on appeal.

- 6 -

doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

"A conviction for the unlawful possession of [contraband] can be supported exclusively by evidence of constructive possession," whether sole or joint. *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009) (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008)). Constructive possession may be established by "evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the [contraband] and that the [contraband] was subject to his dominion and control." *Id.* (quoting *Bolden*, 275 Va. at 148). "[T]he issue of what constitutes constructive possession 'is largely a factual one.'" *Id.* (quoting *Ritter v. Commonwealth*, 210 Va. 732, 743 (1970)). Accordingly, the trial court's judgment "will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." *Epps v. Commonwealth*, 66 Va. App. 393, 402 (2016) (quoting *Martin v. Commonwealth*, 4 Va. App. 438, 443 (1987)).

Although "ownership or occupancy alone is insufficient to prove knowing possession of [contraband] located on the premises or in a vehicle," other circumstantial evidence coupled with ownership or occupancy often establishes the constructive possession of such contraband. *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992). The jury's conclusion was supported by the totality of the circumstances here. As the driver, Lewis possessed the blue pickup truck containing the duffel bag holding the thirty bags of methamphetamine. Although he did not own the pickup truck, Lewis used it for several days just before the incident, and police found his personal property throughout the truck, including his employee "name badge," motorcycle vest, notebooks, and receipt. *See Albert v. Commonwealth*, 2 Va. App. 734, 742 (1986) (holding that the evidence established that the defendant possessed contraband that was near "his wallet,

- 7 -

identification papers and a bottle of prescribed medicine bearing his name"). The badge was beside a firearm in the center console, and the notebooks and vest near the duffel bag containing the drugs and receipt. From that evidence, a rational fact finder could conclude that Lewis knowingly and intentionally possessed the methamphetamine in the duffle bag. *Cf. Ervin v. Commonwealth*, 57 Va. App. 495, 517 (2011) (en banc) (holding that a driver constructively possessed marijuana in a glove compartment because it was implausible that such a valuable "commodity" would be "abandoned or carelessly left" by its owner (quoting *Ward v. Commonwealth*, 47 Va. App. 733, 753 n.4 (2006))).[5]

We therefore hold that the trial court's rulings denying Lewis' motions to strike were not plainly wrong or without evidentiary support.

    II. The Commonwealth failed to prove that Lewis possessed the requisite drug weight for Code § 18.2-248(C)(4) to apply.

Lewis also argues that the evidence was insufficient to find him guilty under Code § 18.2-308(C)(4), triggering enhanced penalties. He assigns the following error: "At sentencing, the Court erred in finding that Defendant possessed with intent to distribute ten (10) grams or more of methamphetamine, as the Certificate of Analysis and testimony at Trial did not support said finding." The Commonwealth argues that Lewis defaulted this assignment of error and that even if he did not, Code § 18.2-308(C)(4) "contains no requirement for a purity determination."

As for the alleged procedural default, the Commonwealth asserts that the assignment of error characterizes the issue as one of "sentencing," but "the weight of methamphetamine Lewis possessed was an element of the offense," so the "sentencing phase was not the proper time to

---

[5] Lewis suggests *Burchette* requires a different result, but there, we held that the evidence failed to prove the defendant constructively possessed marijuana in his vehicle because no evidence established that he "occupied the vehicle or had exercised dominion over it while the marijuana was present in it." 15 Va. App. at 435. By contrast, Lewis was not only present in the pickup truck with the methamphetamine, but he was also the driver and had many personal effects in the truck.

challenge the sufficiency of the evidence of that element." The Commonwealth acknowledges that "Lewis could challenge the sufficiency of the evidence in a motion to set aside the verdict" and that "in fact, he did so" but argues his assignment of error "does not challenge the trial court's ruling on the motion," but a "purported *sentencing* decision," and thus does not lay a finger on the error. *See Carroll v. Commonwealth*, 280 Va. 641, 649 (2010) ("it was the duty of [defendant's] counsel to 'lay his finger on the error'" in the assignments of error). But Lewis does not challenge the sentencing decision. Instead, he lays blame on the court's "finding that Defendant possessed with intent to distribute ten (10) grams or more of methamphetamine" under the applicable statute. The court took up Lewis's motion to set aside the verdict, which raised this issue, at the beginning of the sentencing hearing (hence the "at sentencing" in his assignment of error). The assignment of error cites both the motion and argument as the places where the error was preserved. Thus, Lewis has adequately identified the error he asks us to take up, and we do so here.

To determine whether there was evidence to support a conviction under Code § 18.2-248(C)(4), we must interpret the statute, raising a question of law which we review de novo. *See, e.g.*, *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007). As always, when interpreting a statute, "our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (quoting *Commonwealth v. Amerson*, 281 Va. 414, 418 (2011)). Should the language of the statute be "subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute." *Id.* (quoting *Kozmina v. Commonwealth*, 281 Va. 347, 349 (2011)). "We do not isolate particular words or phrases but rather examine a statute in its entirety." *Colbert v. Commonwealth*, 47 Va. App. 390, 395 (2006).

Code § 18.2-248(A) makes it an offense to possess "a controlled substance" with the intent to distribute the same, "[e]xcept as authorized in the Drug Control Act (§ 54.1-3400 et seq.)." When the term "controlled substance[]" is "used in Title 18.2," it refers to the term as "used or defined in the Drug Control Act." Code § 18.2-247(A). The Drug Control Act contains several schedules of "controlled substances." "The Board of Pharmacy is charged with administering Article 5 of the Drug Control Act and adding or removing substances from the various schedules." *Powell v. Commonwealth*, 289 Va. 20, 29 (2015).

The "nature" of the substance is an element of an offense under Code § 18.2-248. *Cypress v. Commonwealth*, 280 Va. 305, 319 (2010). An indictment charging the possession with intent to distribute "Methamphetamine, a Schedule II substance," (as was the case here before the indictment was amended), necessarily refers to and incorporates the definition of the "substance" as set out in Schedule II. Schedule II contains a subheading: "Any material, compound, mixture or preparation which contains any quantity of the following substances having a potential for abuse associated with a stimulant effect on the central nervous system." Under that subheading, the statute lists "[a]ny substance which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers." Code § 54.1-3448(3). Therefore, for a general charge under Code § 18.2-248, the "controlled substance" of methamphetamine includes "any material, compound, mixture, or preparation which contains any quantity of . . . any substance which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers." As we have never been asked to consider the definition of methamphetamine under Code § 18.2-248(C)(4), our prior decisions have referred generally to "methamphetamine" in a manner consistent with this definition from Schedule II. *See, e.g.*, *Holmes v. Commonwealth*, __ Va. App. __ (Nov. 22, 2022) (affirming that the Commonwealth can prove the nature of a substance, including methamphetamine, through evidence other than a lab report).

Code § 18.2-248 then sets out several enhanced offenses beyond basic distribution. Some of these enhancements are based on prior offenses, and some are based on drug weight. Here, we must decide whether "purity" is relevant to the enhanced methamphetamine offense in Code § 18.2-248(C). The pertinent part of this subparagraph states:

> Any person who manufactures, sells, gives, distributes or possesses with the intent to manufacture, sell, give or distribute the following is guilty of a felony punishable by a fine of not more than $1 million and imprisonment for five years to life, five years of which shall be a mandatory minimum term of imprisonment to be served consecutively with any other sentence:
>
> 1.  100 grams or more of a mixture or substance containing a detectable amount of heroin;
>
> 2.  500 grams or more of a mixture or substance containing a detectable amount of [coca leaves, cocaine, or ecgonine];
>
> 3.  250 grams or more of a mixture or substance described in subdivisions 2a through 2d that contain cocaine base; or
>
> 4.  10 grams or more of methamphetamine, its salts, isomers, or salts of its isomers or 20 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

To begin with, we observe that, unlike the baseline offense in subparagraph (A), this portion of subparagraph (C) does not reference "controlled substances." Therefore, the terms "used or defined in the Drug Control Act" do not automatically apply. Instead, the General Assembly elected to apply its own definitions in Code § 18.2-248(C). For example, while Schedule II identifies "cocaine or any salt or isomer thereof" as one controlled substance, the statutory enhancement in Code § 18.2-248(C) applies to "500 grams or more of a mixture or substance containing a detectable amount of . . . cocaine, its salts, optical and geometric isomers, and salts of isomers." Likewise, while Schedule II references "ecgonine" as a *subset* of "coca leaves and any salt, compound, derivative, or preparation of coca leaves," Code § 18.2-248(C)(2)(c) separately classifies "[e]cgonine, its derivatives, their salts, isomers, and salts of isomers."

- 11 -

The General Assembly's treatment of "methamphetamine" immediately stands out as unique compared to the other drugs selected for potential enhancement in subparagraph (C). Whereas the drug weight may apply to "a mixture or substance containing a detectable amount" of heroin or cocaine-related substances, Code § 18.2-248(C)(4) distinguishes between "10 grams or more of *methamphetamine*, its salts, isomers, or salts of its isomers" and "20 grams or more of a *mixture or substance containing a detectable amount of methamphetamine*, its salts, isomers, or salts of its isomers." (Emphasis added). There is no way to read this language but to conclude that there is a difference between "methamphetamine, its salts, isomers, or salts of its isomers" and "a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers." More weight is required for a "mixture or substance containing a detectable amount" of methamphetamine to trigger the same enhanced penalty that applies to "methamphetamine."

The Commonwealth has not proposed any plausible alternate interpretation of this provision, instead relying on our prior decision in *Shackleford v. Commonwealth*, 32 Va. App. 307, 328 (2000), where we observed that the "Commonwealth was not required to prove the purity of the substance" in a prosecution under Code § 18.2-248.01. Then, and now, this statute made it unlawful to transport into the Commonwealth "one ounce or more of cocaine, coca leaves or any salt, compound, derivative or preparation thereof as described in Schedule II of the Drug Control Act." Code § 18.2-248.01. Shackleford argued that the Commonwealth failed to prove that the weight of drugs exceeded one ounce because "only a sampling of the substance was tested," and therefore, "the entire weight of the substance may not be attributable as cocaine." *Shackleford*, 32 Va. App. at 328. Rather than extrapolate, Shackleford argued that the forensic scientist should have "tested each gram to determine the purity of the substance." *Id.* We held that under Code § 18.2-248.01, the Commonwealth was not required to prove the purity of the substance because

- 12 -

"[t]he language of the statute mandates that the quantity of the mixture—the 'compound' or 'preparation'—rather than the purity of the cocaine in the mixture be used to determine the weight of the substance." *Id.*

The language of Code § 18.2-248(C)(4) is different, and requires a different result. Not only does the phrase "10 grams or more of methamphetamine, its salts, isomers, or salts of its isomers" not contain the words "compound" or "preparation" (which we found determinative in *Shackleford*), but also Code § 18.2-248(C)(4) sets a different threshold weight for "a mixture or substance" containing methamphetamine. What is more, as discussed above, the General Assembly's treatment of methamphetamine contrasts with the other drugs singled out under this provision. We can only conclude that the Commonwealth must prove a "pure" drug weight of ten grams or more of methamphetamine, its salts, isomers, or salts of its isomers under Code § 18.2-248(C)(4), or instead elect to prove twenty grams of a "mixture" containing any detectable amount of methamphetamine.

This conclusion is evident from the text of the statute alone. So it is unsurprising that the Virginia Criminal Sentencing Commission ("VCSC") interprets the language just as we do today— explaining that Code § 18.2-248's enhanced offenses distinguish between "pure methamphetamine" and "methamphetamine mixture." The General Assembly added these mandatory minimums for methamphetamine in 2000 as part of the Substance Abuse Reduction Effort, or SABRE. An initiative of Governor Gilmore, SABRE was "aimed at drug kingpins and dealers."[6] Right after the new law took effect, VCSC explained that "[u]nder § 18.2-248(H) . . . an offender who manufactures, distributes, sells or possesses with intent to sell at least 100 grams of pure methamphetamine or at least 200 grams of a mixture containing methamphetamine is subject to a mandatory minimum penalty of 20 years." VCSC, *2001 Annual Report* 43 (2001). In 2007, the

_____

[6] Virginia Department of Planning and Budget, *Building Virginia's Future: A Time for All Virginians*, at A-7 (2000), https://dpb.virginia.gov/budget/00-02/buddoc00/overview.pdf.

VCSC again observed that "[w]hile Virginia's [sentencing] guidelines do not account for the purity or type of drug, Virginia's drug kingpin laws distinguish between pure methamphetamine and a methamphetamine mixture in specifying the amounts that trigger mandatory minimum sentences." VCSC, *2007 Annual Report* 104 (2007).

Our conclusion is also bolstered by the United States Supreme Court's interpretation of identical language in the 1986 Anti-Drug Abuse Act of 1986, codified in 21 U.S.C. § 841. *Chapman v. United States*, 500 U.S. 453, 459 (1991). In *Chapman*, the Supreme Court considered the federal drug statute's reference to a "mixture or substance containing a detectable amount" of certain drugs, including heroin, cocaine, and LSD, and concluded that, for these drugs, "[s]o long as it contains a detectable amount, the entire mixture or substance is to be weighed when calculating the sentence." *Id.* In so holding, the Supreme Court rejected the argument that the penalty "turn[ed] on the net weight of the drug rather than the gross weight of the carrier and drug together." *Id.*

As a matter of statutory interpretation, *Chapman* reasoned that the federal drug statute's use of "mixture or substance containing a detectable amount" differed from the treatment of PCP and methamphetamine, which "provide[d] for a mandatory minimum sentence based *either* on the weight of a *mixture or substance* containing a detectable amount of the drug, *or* on lower weights of *pure* PCP or methamphetamine." *Id. Compare* 21 U.S.C. § 841(b)(1)(A)(i) (1991) ("1 kilogram or more of a mixture or substance containing a detectable amount of heroin"), *with* 21 U.S.C. § 841(b)(1)(A)(viii) (1991) ("100 grams or more of methamphetamine, its salts isomers, and salts of its isomers or 1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers").[7] "Thus, with

_____

[7] Currently, 21 U.S.C. § 841(b)(1)(A)(viii) sets mandatory minimum sentences in cases involving "50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or

respect to these two drugs, Congress clearly distinguished between the pure drug and a 'mixture or substance containing a detectable amount of' the pure drug." *Chapman*, 500 U.S. at 459.

When the General Assembly added mandatory minimum sentences based on certain drug weights, it similarly identified certain drugs where a "mixture or substance containing a detectable amount" was sufficient to meet the weight threshold for heroin, and various cocaine-related substances. But for methamphetamine, the General Assembly elected to distinguish between the pure drug and a "mixture or substance containing a detectable amount of" the pure drug.[8] We must assume these words were chosen carefully. *City of Virginia Beach v. ESG Enters.*, 243 Va. 149, 153 (1992) ("[W]hen analyzing a statute, we must assume that 'the legislature chose, with care, the words it used . . . and we are bound by those words as we interpret the statute.'" (quoting *Barr v. Town & Country Props.*, 240 Va. 292, 295 (1990))).

Having concluded that the statutory enhancement in Code § 18.2-248(C)(4) requires proof of either ten grams or more of pure methamphetamine or twenty grams of a mixture or substance containing methamphetamine, we find that the evidence was insufficient to prove an

---

500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers."

[8] In assigning higher culpability to pure methamphetamine in this way, Virginia is an outlier among states. It appears that only West Virginia similarly mirrors the federal framework for distribution offenses. *See* W. Va. Code Ann. § 60A-4-414(b) (West 2022) ("fifty grams or more of methamphetamine or five hundred grams of a substance or material containing a measurable amount of methamphetamine"); *see also* Okla. Stat. Ann. tit. 63, § 2-401(G)(3)(h) (West 2022) (providing enhanced penalties for manufacturing "fifty (50) grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers"); Cal. Penal Code § 29820(a)(1)(C) (West 2022) (prohibiting the possession of firearms based on certain convictions including possession for sale, or sale of, "a substance containing 28.5 grams or more of methamphetamine or 57 grams or more of a substance containing methamphetamine"). Many federal district courts have recently denounced the logic behind assessing higher penalties for actual methamphetamine than methamphetamine mixture. *See, e.g.*, *United States v. Moreno*, 583 F. Supp. 3d 739, 743-46 (W.D. Va. 2019) (collecting cases) (observing that purity is no longer an accurate indicator of a defendant's role in a drug trafficking conspiracy and that prosecutions based on purity may be arbitrary).

element of the offense.  *See Butler v. Commonwealth*, 64 Va. App. 7, 14 (2014) (affirming that a "jury determine[s] all the factual elements of the offense" including "enhanced factors for sentencing" as elements of the offense).  The DFS analyst testified at trial that she analyzed twenty bags of off-white crystalline substance and "each was found to contain methamphetamine" with a total weight of "10.5087, plus or minus 0.0660 grams of substance" and that the "gross weight" of the remaining ten bags was "7.2975 gram(s) including innermost packaging."[9]  No purity analysis was performed.[10]  Thus, there is no evidence that the drugs met either weight threshold.

At oral argument, the parties agreed that—if we found Code § 18.2-248(C)(4) contained a purity requirement—remand for resentencing under Code § 18.2-248(A) was appropriate. Accordingly, having already found the evidence was sufficient for the general offense of possessing methamphetamine with the intent to distribute it under Code § 18.2-248, we remand the case for resentencing on this lesser-included offense.  *See, e.g.*, *Roach v. Commonwealth*, 51 Va. App. 741, 751 (2008) (remanding for resentencing where evidence presented at trial proved

---

[9] At oral argument, the Commonwealth suggested we could infer from the DFS analyst's testimony about her familiarity with the ten and twenty gram thresholds from Code § 18.2-248(C)(4) that because she did not test the remaining bags of methamphetamine, stopping after getting to 10.5087 grams, that the substance was pure methamphetamine.  This is unconvincing for two reasons.  First, because the testimony equally supports the possibility that she assumed both weight thresholds applied to a substance or mixture of methamphetamine and that is why she did not keep testing, since she could not reach more than "20 grams or more of a mixture or substance containing a detectable amount of methamphetamine."  And second, because the certificates of analysis both stated that the "off-white crystalline substance" was analyzed and "found to *contain* Methamphetamine" (not that the substance *was* methamphetamine) and also affirmed that "[a] purity determination was not performed."

[10] The Department of Forensic Science's Controlled Substances Procedures Manual confirms that "[t]he purity of evidence found to contain methamphetamine will not be routinely determined unless it is specifically requested by a Commonwealth's Attorney."  Dep't of Forensic Sci., *Controlled Substances Procedures Manual* 17 (2022), https://www.dfs.virginia.gov/wp-content/uploads/221-D100-Controlled-Substances-Procedures-Manual.pdf.  We do not reach today whether the Commonwealth could ever prove the purity of methamphetamine through evidence other than lab testing.

beyond a reasonable doubt that appellant committed the lesser-included offense of misdemeanor obstruction of justice); *Commonwealth v. South*, 272 Va. 1, 1 (2006) (holding that, when the evidence is insufficient to support conviction of a greater offense, remand for sentencing on a lesser-included offense is appropriate).

## CONCLUSION

For Code § 18.2-248(C)(4) to apply, the Commonwealth must prove a drug weight of either ten grams of pure methamphetamine or twenty grams of a mixture or substance containing methamphetamine. There was no evidence presented at trial that would have enabled a jury to conclude either threshold was met here. We reverse and remand for resentencing under Code § 18.2-248(A).

*Reversed and remanded.*